## ABRAMS *v.* FOSHEE AND WIFE.

To cause or procure an abortion, before the child is quick, is not a criminal offence at common law, whatever it may be after the child is quick.

An infant in *ventre sa mere*, is not a human being within the meaning of section 2508 of the Code.

To charge a woman with causing or procuring an abortion, is not to charge her with the crime of murder, under the law of Iowa.

Where there is no law punishing the act of causing or procuring an abortion, at the time of the speaking of the words, to charge a person with such an act, is not actionable, *per se*.

The appellate court will not allow a party to be prejudiced by the refusal of the court to give a correct instruction, because the same may possibly have been given in instructions which have been lost, without his fault.

Where in an action for slander, the alleged slanderous words were substantially as follows: "She is a bad woman; she has destroyed with instruments, children since she has been here; she has destroyed one or two children since she has been here; she takes medicine and kills her children; she destroys her children," which were alleged to have been spoken on the first day of January, 1855; and where on the trial, the defendant asked the court to instruct the jury as follows: "Words charging a woman with causing or producing an abortion, in this state, since the first day of July, 1851, are not in themselves actionable; that producing an abortion, before the child is quick, is not now a crime in Iowa, and has not been since July 1, 1851; and that charging a female with having produced an abortion, under such circumstances, is not actionable," which instructions the court refused to give; *Held*, That the instructions were improperly refused.

*Appeal from the Davis District Court.*

SLANDER. Verdict and judgment for plaintiff. The pe-

tition contains twelve counts, charging the slanderous words to have been spoken in various forms. The substance of the charging part of most of the counts, is as follows: " That the wife of defendant, on the first day of January, 1855, in speaking of the fact, that the wife of the plaintiff did not have children born alive, and of and concerning the subject of producing abortion and destroying children before birth, of which said plaintiff's wife had been pregnant, falsely and maliciously spoke, and published of the said Julia A., (wife of plaintiff,) these slanderous words, to wit: "she is a bad woman; she has destroyed with instruments, children since she has been here; she has destroyed one or two children since she has been here; she takes medicine and kills her children; she destroys her children." One count charges the defendant's wife with having said, "she (meaning plaintiff's wife) is not a decent woman; she has sexual intercourse with other men." No special damages are claimed; the petition was demurred to, for the reason that the words charged are not actionable *per se*, which demurrer was overruled. On the trial, the defendants asked the following, among other similar instructions:

Words, charging a woman with causing or producing an abortion, in this state, since the first day of July, 1851, are not in themselves actionable; that producing an abortion before the child is quick, is not now a crime in Iowa, and has not been since July 1, 1851; and that charging a female with having produced an abortion, under such circumstances, is not actionable; which instructions were refused. It appears from the certificate of the clerk, that the instructions in chief given to the jury, had never been returned by them, and what those instructions were, is in no manner shown. Defendants appeal.

*Palmer & Trimble*, for the appellants, cited the following authorities: *Onslow* v. *Wilson*, 3 Wilson, 177; *Chaddock* v. *Briggs*, 13 Mass. 248; *Blass* v. *Tobey*, 2 Pick. 320; *Harvey* v. *Boies*, 1 Penr. & W. 12; *Weierbach* v. *Trone*, 2 Watts & Serg. 408; *Williams* v. *Karnes*, 4 Humph. 9; *Elliott* v.

*Ailesberry*, 2 Bibb, 473; *Mills and wife* v. *Wimp*, 10 B. Monr.; *Billings* v. *King*, 7 Vermont, 439; *Shafer* v. *Kinster*, 1 Binney, 537; *Chapman* v. *Cook*, 2 Tyler; *Coburn* v. *Howard*, Minor, 93; *McEwen* v. *Ludlam*, 2 Harrison, 13; *Kinney* v. *Kasla*, 3 Harrington, 77; *Taylor* v. *Kneeland*, 1 Douglass, 68; *Giddons* v. *Meek*, 4 Geo. 364; *Dunnell* v. *Fisk*, 11 Metc. 551; *Tenney* v. *Clement*, 10 New Hamp. 32; *Heming* v. *Power*, 10 Mees. & Wels. 564; *Byron* v. *Elmes*, Salkeld, 693; *Brandt and wife* v. *Roberts and wife*, 4 Burrows, 2418; 2 Johns. 115; 6 Harr. & Johns. 248; 3 New Hamp. 194; 2 Nott & McCord, 204; 4 Stew. & Port. 387; 2 Bibb, 473.

*C. C. Nourse*, and *Knapp & Caldwell*, for the appellees, cited the following: Code, §§ 25, 68; Chitty's Med. Juris. 410; *Malone* v. *Stewart and wife*, 15 Ohio, 320; *Daily* v. *Reynolds*, Iowa Sup. Court, 1854.

WRIGHT, C. J.—But one question is presented for our consideration by appellants, and that is, whether words charging a woman with causing or producing an abortion, are actionable in this state?

The appellees claim, first, that as the instructions in chief, are not before us, we cannot say but that the instructions asked by appellants, were refused, because they had been previously given. The whole record rebuts any such presumption. The overruling of the demurrer, which raised substantially the same questions, clearly shows that on this point the court could not have instructed in chief, as requested by appellants. And then, again, these instructions are asked in so many different forms, and refused in all, that we can hardly suppose, that the same view had been taken in the previous instructions. But still further, we would be unwilling to allow a party to be prejudiced by the refusal of the court to give a correct instruction, because the same may possibly have been given in instructions which have been lost, without his fault.

It is next claimed by appellees, that one count charges the defendant's wife with having been guilty of adultery; that

the proof may have been confined to that count alone; and if so, the instructions asked, were properly refused, on the ground of their inapplicability.   The whole record, however, so unmistakably shows that the words charging the abortion, were those relied upon for a recovery, that we should be doing violence to suppose the instructions were refused as being inapplicable; and especially so, as nothing of the kind is intimated by the judge trying the cause, when refusing such instructions.   We conclude, therefore, that the question is fairly presented, whether the instructions asked were correct, and should have been given.

To maintain an action of slander, the consequence of the words spoken, must be to occasion some injury or loss to the plaintiff, either in *law* or *fact*.   As the declaration in this case, claims no special damages, or a loss or injury, in *fact*, we are left to inquire whether the charge referred to in the instructions refused, was of such a character as to amount to an injury *in law*.   To determine this, it becomes material to ascertain in what cases this action may be maintained, without proof of special damages.   Starkie, in his work on Slander, page 9, lays down the rule, that such action may be maintained "when a person is charged with the commission of a *crime;* when an infectious disorder is imputed; and when the imputation affects the plaintiff in his office, profession, or business."   In this case, we only need examine the rule so far as it relates to the charge of a crime.   And what is that rule?   In *Cox and wife* v. *Bunker and wife*, Morris, 269, the Supreme Court of this territory, recognized the rule laid down in *Miller* v. *Parish*, 8 Pickering, 385, as the proper one.   And in that case it is said, that "whenever an offence is charged, which if proved, may subject the party to a *punishment*, though not ignominious, but which brings disgrace upon the party falsely accused, such an accusation is actionable.   And this is, perhaps, as correct, and at the same time as brief a statement of the general rule, as has been given. For while the rule is variously stated, by different authors and judges, yet in all of them, it is laid down as necessary that the charge shall impute a punishable offence.   To this

there may be an exception in that class of cases, where the words relate to the reputation of a female for chastity. But of such charges, we shall have occasion to speak hereafter.

With this rule in view, then, we are to determine whether to charge a woman with procuring an abortion, in this state, since the first of July, 1851, is actionable *per se*. By the statute of 1843, the willful killing of an unborn quick child, by any injury, &c., was made manslaughter. Revised Statutes, 1843, 167, § 10. This was repealed by the Code, which took effect, July 1, 1851. Since that time, it is conceded, we have no law punishing this offence by name. But it is claimed, that such a child is a *human being*, within the meaning of section 2508, which provides, that whoever kills any human being, with malice aforethought, either express or implied, is guilty of murder. If this be so, then the charge would clearly impute a punishable offence, and would be actionable *per se*. But in this view, we cannot concur. It will be observed, that one of the instructions asked and refused, was, that to charge a woman with causing an *abortion*, was not actionable *per se*, in this state, since the first of July, 1851. The other is to the same effect, except that it uses the words, "before the child is quick." By abortion, we understand the act of miscarrying, or producing young before the natural time, or before the fœtus is perfectly formed. And to cause or produce an abortion, is to cause or produce this premature bringing forth of this fœtus. And, notwithstanding the infant in *ventre sa mere*, is treated by the law for some purposes, as born, or as a human being, yet we are not aware, that it has been so treated, so far as to make the act of causing its miscarriage *murder*, unless so declared by statute. And, certainly, independent of statute, it is not a punishable offence, when the child is not quick in the womb. When the child is born, however, it becomes a human being, within the meaning of the law; and if it shall then die, by reason of any potions or bruises it received in the womb, it would be murder in those who administered or gave them, with a view of causing the miscarriage.

In Russell on Crimes, it is said, that "an infant in the

mother's womb, not being in *verum natura*, is not considered as a person who can be killed, within the description of murder; and, therefore, if a woman being quick or great with child, take any potion to cause an abortion, or if another give her any such potion, or if a person strike her, whereby the child within her is killed, it is not murder or manslaughter." Russ. on Crimes, 390.   The statute of 43 Geo. III, c. 58, provided, however, for the punishment of such offences, making the offence, when the child was *quick* in the mother's womb, capital, and if not quick, a felony.   The law is stated thus by Blackstone, in his Commentaries, Vol. I, p. 129, "If a woman is quick with child, and by a potion or otherwise, killeth it in her womb, and she is delivered of a dead child, this, though not murder, was by the ancient law, *homicide* or manslaughter.   But the modern law doth not look upon this offence in quite so atrocious a light, but only as a heinous *misdemeanor*."   To support an indictment for infanticide, at common law, the rule, as uniformly recognized, is that it must clearly appear, that the child was wholly born, and was born alive, having an independent circulation and existence.   3 Greenl. Ev. § 136.   If a woman be quick with child, and by a potion or otherwise, killeth it in her womb, and she is delivered of a dead child, this is a great misprision, and no murder.   3 Coke Inst. 50.   In *Commonwealth* v. *Parker*, 9 Metcalf, 263, it is held, not to be a punishable offence by the common law, to perform an operation upon a pregnant woman with her consent, for the purpose of procuring an abortion, and thereby to effect such purpose, unless the woman is quick with child.   And to the same effect, is the case of the *Commonwealth* v. *Bangs*, 9 Mass. 387. See also the case of *The State* v. *Cooper*, 2 Zabriskie, 52 ; where this subject is very fully discussed, and many of the authorities collected.   These authorities agree in holding, that to cause, or procure an abortion, *before* the child is quick, is not a criminal offence at common law, whatever it may be after the child is quick.   And we think it to be equally true, that an infant in *ventre sa mere*, is not a human being within

the meaning of section 2508 of the Code. It is certainly not such, before it is quick in the womb.

To charge a woman with causing or procuring an abortion, is not, therefore, to charge her with the crime of murder under our law ; and there being no law punishing such an act in this state, at the time the words were spoken, we think the instructions asked, were improperly refused.

The counsel for appellees claim, however, that the ruling of the court below is sustained by the case of *Reynolds* v. *Daily*, decided in this court, in 1854. The opinion in that case we have not been able to see, and cannot, therefore, say with certainty, how far it is applicable. We understand, however, that the words spoken in that case, imputed a want of chastity to the plaintiff, who was an unmarried female, and that the ground assumed substantially, was, that such a charge would tend necessarily to exclude her from society, and render her infamous in the common sense of that term ; and that such a charge was actionable, on the broad, plain ground, that it would immediately and necessarily tend to hinder her advancement in life. And, notwithstanding this may be regarded as a departure from the general rule, heretofore stated, we have no disposition to question its correctness. It is sustained by not a few well considered cases, and is founded in reason and justice. It has its origin, and receives its sanction, in that just jealousy and care with which the reputation of the female for chastity, is guarded in every civilized community. It is true, that courts hesitated in departing this much from the general rule, and many of them still hold that in the absence of a *statute* punishing adultery and fornication, words imputing a want of chastity are not actionable. And while we concur in what we understand to be the ruling in the case of *Reynolds* v. *Daily*, we do not think it can aid the plaintiff in this action. We think, the reasoning and argument in support of the actionable character of such a charge, cannot apply to the one alleged to have been made in this case. It is true, that to charge a woman with such an act, might injure her in the estimation of the community. And so might many other charges affect her

good name, and yet not amount to the charge of a crime, so as to be actionable, without the averment and proof of special damages. To say of her that she was a common tattler, or liar, or that she indulged in the use of profane or vulgar language; that she was a drunkard, or the like, would reasonably, if believed, have a tendency to bring her into disrepute, but such words would not be actionable *per se*. But to impute to her a want of chastity, is to charge her with the want of that, without which the female is necessarily and certainly driven beyond the circle of virtuous friends and acquaintances. Such a case is an exception to the general rule, is sustained by reasons that apply to it alone, because of the peculiar character of the charge, and beyond it, we are not willing to go at present.

The case of *Malone* v. *Stewart and wife*, 15 Ohio, 319, we do not believe to be law. It has not been followed, as far as we have been able to examine, by any other court, but, on the contrary, its correctness has been denied or questioned, and we think, with propriety. 1 American Leading Cases, 116.

Judgment reversed.