The State v. Moore.

THE STATE v. MOORE.

1. **Criminal law:** ABORTION : MURDER. The crime of murder is essentially the same under our statute as at common law, and whatever would be regarded as murder or manslaughter in a common law tribunal will be so regarded here. To cause death by procuring an abortion was, at the common law, and is, therefore, in this State,

murder, independent of as well as under the act of March, 1858, making abortion a criminal offense, although there was no intent to cause the death of the woman.

2. —— ABORTION : IS MORE THAN MANSLAUGHTER. To cause death in procuring a willful abortion is, under our statute, murder in the second degree, and, in a prosecution therefor, it is not error to refuse to charge the jury that they may convict defendant of manslaughter.

3. —— IMPEACHING EVIDENCE : TIME OF MAKING OBJECTION. *Semble,* that where, in a criminal prosecution, certain witnesses of the State are sought to be impeached by witnesses introduced by the defendant, by attacking their general character, witnesses may in turn be introduced by the State to impeach the impeaching witnesses of the defense. At all events, objection to the admissibility of such evidense should be made at the time it is offered, and cannot be urged after the evidence has been permitted to come in.

4. —— ACCOMPLICE : WIFE OF IS COMPETENT WITNESS. In a criminal prosecution, the wife of an accomplice may testify, and the weight of her testimony is for the jury.

### *Appeal from Des Moines District Court.*

### MONDAY, JUNE 22.

MURDER : ABORTION : EVIDENCE, ETC. — The defendant is indicted for murder in the second degree. The indictment charges, in substance, that the defendant, by means of medicines administered and instruments used to and upon Mrs. Sarah Grant, with intent to produce and procure an abortion (she being then quick with child), caused her death, etc. No question is made upon the form of the indictment. It is distinctly alleged that the defendant used the medicines and instruments when the same were not necessary to preserve the life of the woman, and with the specific intent to produce an abortion, and that death ensued therefrom. But it is not alleged that the defendant used these means for the purpose or with the intention to cause the death of Mrs. Grant.

The defendant demurred to the indictment, for the reason that the offense charged was not murder. The

same question is presented by the instructions and in the motion for a new trial.

Upon a plea of not guilty a trial was had, resulting in the conviction of the defendant of murder in the second degree, and judgment that he be sentenced to imprisonment in the penitentiary for the term of ten years. The defendant appeals. It is only necessary to give such an outline of the facts as to make the points ruled by the court intelligible.

The defendant is a practicing physician. The deceased, Mrs. Grant, in company with her husband, one B. A. Grant, were found about the first of November, 1866, at the residence of one Bowman, at an out-of-the-way place in Henry county, in this State. The evidence tends to show that Grant and his wife went to Bowman's in virtue of a preconcerted arrangement to that effect, and to which Grant, Bowman and Dr. Moore (the defendant) were parties. This distinctly appears from the testimony of Bowman, who, though jointly indicted with the defendant and Grant, gave evidence for the State, and is corroborated by other circumstances elicited at the trial. Soon after the arrival of Grant and his wife at Bowman's, Dr. Moore was sent for or appeared ; and Mrs. Bowman testifies that when Dr. Moore came he gave Mrs. Grant " a dose of medicine, and after that he used an instrument which I thought was a wire run through a cane stem, and which when he took it away was covered with blood." In time labor pains came on, puerperal convulsions set in, a stillborn child apparently six or seven months old was delivered, and in a few days the death of Mrs. Grant followed, and Bowman, Grant and Moore fled. The defendant was afterward arrested in Nebraska and brought to Henry county for trial, and upon his application the venue was changed to the county of Des Moines.

It appeared that Mr. and Mrs. Grant had been married

The State v. Moore.

only about two months. The evidence justifies the infer
ence that the object of the abortion, to which it does not
appear she was opposed, was to conceal the fact from the
public that the child had been begotten out of wedlock.
The other necessary facts are stated in the opinion.

*Henry O'Connor*, Attorney-General, for the State.

*B. J. Hall* for the defendant.

DILLON, Ch. J. — I. The leading question made by the
defendant's counsel is, that, conceding the defendant give

1. CRIMINAL Mrs. Grant medicines and used instruments
LAW: abor-
tion: murder. purposely to produce an abortion, yet, if her
death happened therefrom when not intended or contem-
plated by him, this is not murder, unless it was done by
assault or against her will. Substantially this question
is presented by the demurrer to the indictment, by the
instructions given and refused, and by the motion for a
new trial.

Refusing to charge in conformity with the defendant's
proposition as above stated, the court on its own motion
instructed the jury as follows: "To attempt to produce
a miscarriage, except when in proper professional judg-
ment it is necessary to preserve the life of the woman, is
an unlawful act. It is known to be a dangerous act,
generally producing one and sometimes two deaths, — I
mean the death of the unborn infant and the death of
the mother. Now, the person who does this is guilty of
doing an unlawful act. If the death of the woman does
not ensue from it, he is liable to fine and imprisonment
in the county jail (act March 15, 1858, Rev. § 4221); and,
if the death of the woman does ensue from it, though
there be no specific intention to take her life, he becomes
guilty of the crime of murder in the second degree. The

guilt has its origin in such cases in the unlawful act which the party designs to commit, and if the loss of life attend it as incident or consequence, the crime and guilt of murder will attach to the party committing such an unlawful act."

We have quoted the court's language in order to say that it has our approval as being a correct statement of the law of the land. But it is due to the defendant's counsel — whose argument against the correctness of the propositions stated by the court was so distinguished for its fairness, acumen and ability — to notice, and briefly to answer, his objections to this view.

The defendant's counsel concedes, that, tested by the common law rules, the doctrine of the court's charge is correct. In his written brief he says: "It is conceded that at common law the act of procuring an abortion resulting in the death of the mother is murder." But he contends that under the statutes of the State the doctrine does not apply.

In the outset, he calls attention to the fact that the criminal code of the common law has no existence in Iowa, that is, that in Iowa no act, though indictable at common law, can be punished as a crime unless the criminality of such act has been declared or recognized by the statute. *Estes* v. *Carter,* 10 Iowa, 400. This is followed by the proposition that the act of procuring an abortion was not a criminal offense until made so by the statute of March 15, 1858, reprinted as section 4221 of the Revision. See *Abrams* v. *Forshee,* 3 Iowa, 278 ; *Hatfield* v. *Gano,* 15 id. 177.

The deduction drawn by him from the above is, that, until the statute of 1858, the act of procuring an abortion was not unlawful, because not specifically made criminal by statute, and, not "being *unlawful,* if death ensues therefrom, it is neither murder nor manslaughter,"

The State v. Moore.

·He then admits that if the law of murder, as contained in the Revision (§§ 4191, 4192, 4193, 4194), had been enacted at the same time that the law of March 15, 1858 (Rev. § 4221), was passed, or if the statute on the subject of murder had been passed after the act of 1858 (which made criminal the willful procuring of an abortion), that the doctrine of the court's charge would have been correct.

But the statute defining and punishing murder was passed in 1851, and does not, it is argued, *blend* with the subsequent statute of 1858.

The text of these statutes is given in the margin.\*

The conclusion from these premises is, that prior to 1858 it would not have been murder, under sections 4191 and 4193, to have willfully procured an abortion, though the death of the woman was thereby caused, and that the

---

\* Sections 4191, 4192, 4193, 4194, passed in 1851, are as follows:

"Sec. 4191. Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder.

"Sec. 4192. All murder which is perpetrated by means of poison or lying in wait or any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary, is murder of the first degree, and shall be punished with death.

"Sec. 4193. Whoever commits murder otherwise than is set forth in the preceding section, is guilty of murder in the second degree, and shall be punished by imprisonment in the penitentiary for life, or for a term of not less than ten years.

"Sec. 4194. Upon the trial of an indictment for murder, the jury, if they find the defendant guilty, must inquire, and by their verdict ascertain, whether he be guilty of murder of the first or second degree; but if such defendant be convicted upon his own confession in open court, the court must proceed by the examination of witnesses to determine the degree of murder, and award sentence accordingly."

The act of March 15, 1858 (Rev. ₹ 4221), is as follows:

"Sec. 4221. Be it enacted by the general assembly of the State of Iowa, that every person who shall willfully administer to any pregnant woman, any medicine, drug, substance or thing whatever, or shall use or employ any instrument or other means whatever with the intent thereby to procure the miscarriage of any such woman, unless the same shall be necessary to preserve the life of such woman, shall, upon conviction thereof, be punished by imprisonment in the county jail for a term of not exceeding one year, and be fined in a sum not exceeding one thousand dollars."

subsequent passage of the act of 1858, which says nothing about murder, cannot make that murder which was not so before. This, briefly stated, is believed to be a fair synopsis of the counsel's argument.

Our view is this: Our statute defines murder in the language of the common law definition of that offense. Compare Rev. § 4191 and 4 Black. Com. 195.

As at common law, *malice*, express or implied, is the essential and distinguishing element of murder. Taking sections 4191 and 4193 together, the proper construction is, that what would be regarded as murder in a common law court would be murder under our statute. Section 4192 does not extend or abridge the field of murder, but declares certain specified kinds of homicide to be murder in the first degree, and the next section declares all other kinds of murder (that is, all murder as defined by section 4191) to be of the second degree.

It will be observed that manslaughter is not defined at all, but simply made punishable and the limits of the punishment fixed. Rev. § 4199. It follows that we are remitted to the common law to ascertain what manslaughter is, and it seems also necessarily to follow, that what would be regarded in a common law tribunal as manslaughter would be manslaughter in this State, under our statute.

Inasmuch, therefore, as it is conceded that, at common law, the act charged upon the defendant is murder, the same act is murder in Iowa, and would have been prior to the passage of the act of 1858.

We grant that the present is not a case of express, but of *implied*, malice. In cases of homicide, the settled doctrine of the common law is, that malice may be implied from *unlawful* acts *dangerous* to life, committed without lawful justification. 1 Bish. Com. Law, § 263; Foster on Hom. 261; *Ann* v. *The State*, 11 Humph. 159; *Rex* v.

*Martin*, 3 Car. & P. 211; *Commonwealth* v. *Parker*, 9 Metc. 263–5, per SHAW, Ch. J.

The fundamental proposition of the defendant's argument is, that in Iowa malice cannot be implied from the doing of any act whatever, no matter what its tendency, unless such act is expressly made a crime by statute.

It would result from this, that if there was no statute in Iowa forbidding persons from putting an obstruction on a railroad track, and one were willfully and purposely put there, causing death, the party doing this act (if he did not intend to produce death) could not be convicted of murder, for the reason that malice (in Iowa) cannot be implied from an act not made unlawful by statute.

In this State, we have no statute specifically forbidding a person in a crowded city from throwing a heavy and dangerous beam from a high building, likely to injure and kill passers-by.

At common law, if this be done and death happen, the law would imply malice. But in Iowa, under the doctrine contended for, the party doing an act evincing such an utter and wanton disregard of moral and social duty would not be guilty, even though death be caused thereby, of murder or even manslaughter. These are put by way of illustrations of the consequences of the doctrine maintained by the counsel.

The common law is distinguished, and is to be commended, for its all-embracing and salutary solicitude for the sacredness of human life and the personal safety of every human being. This protecting, paternal care, enveloping every individual like the air he breathes, not only extends to persons actually born, but, for some purposes, to infants *in ventre sa mere*. 1 Black. Com. 129.

The right to life and to personal safety is not only sacred in the estimation of the common law, but it is

The State v. Moore.

inalienable. It is no defense to the defendant that the abortion was procured with the consent of the deceased.

The common law stands as a general guardian holding its ægis to protect the life of all. Any theory which robs the law of this salutary power is not likely to meet with favor. Certain it is, that a doctrine leading to such results as these above instanced cannot be sound, and is not defensible.

We hold, therefore, that, in cases of homicide, malice may, as at common law, be *implied* from any act unlawful and dangerous in its nature, unjustifiably committed.

The willful and unnecessary procurement of an abortion is an act highly dangerous to the mother, and generally fatal, and frequently designed to be fatal, to the child. It is abhorrent to all our notions of sound morality and to all the precepts of our holy religion.

Nearly two hundred years ago Lord HALE laid down the law as follows: " If a woman be with child, and any gives her a potion to destroy the child within her, and she takes it and it works so strongly that it kills her, this is murder; for it was not to cure her of a disease, but unlawfully to destroy the child within her ; and therefore, he that gives a potion to this end, must take the hazard, and if it kills the mother it is murder." 1 Hale P. C. 429, 430.

See also *Tinkler's Case,* cited 1 East P. C. ch. 5, § 16, p. 264, and *Commonwealth* v. *Keeper, etc.,* 2 Ashm. (Pa.) 227, directly in point; Fost. on Hom. 261; *Ann* v. *The State,* 11 Humph. (Tenn.) 159; *Commonwealth* v. *Parker,* 9 Metc. 263–5, per SHAW, Ch. J.

And such is the law to-day and in Iowa. Thus to hold the law to be is not laying a snare for the physician, since his conscience and the sages of that useful and learned profession concur in condemning the practice. By none has the guilt of the offense been more earnestly and per-

suasively portrayed, and its too great prevalence lamented than by eminent medical writers and teachers.

Under the foregoing view, the willful and unnecessary procurement of an abortion resulting in the unintended death of the woman would have been punishable as murder in the second degree prior to the act of 1858. Of the correctness of this view I entertain no doubt. But instead of resting the decision of the present question upon this ground, or upon it alone, the court think all possible doubt removed by the act of 1858. The act of 1851, being unrepealed, continued to speak in 1858, and still continues to speak ; and has the same force and effect as if it had been passed concurrently with or subsequent to the act of 1858. So that if it were true that malice can only be implied from acts legislatively made criminal, we have even in this view all of the conditions of the offense of murder.

. II. The charge against the defendant was not negligence and unskillfulness in procuring an abortion under 2. —— abortion: justifiable circumstances, but the willful pro-
is more than
manslaughter. curement of an abortion without any necessity for it, whereby death was occasioned.

If death unexpectedly results from such an act, the crime we have seen was at common law murder, and under our statute is murder in the second degree. Under the charge, and under the evidence, the defendant was guilty of murder in the second degree, or of nothing, and hence the court did not err in refusing to say to the jury that they might convict the defendant of manslaughter.

III. The defendant introduced several witnesses to impeach certain witnesses sworn for the State, by attack-
3. —— im-
peaching evi-
dence: time
. of objection. ing their general character. The defendant complains, that in rebuttal the State was allowed to introduce witnesses to attack the character of the impeaching witnesses.

As ·we read the record, the objection that this kind of evidence was imcompetent, if made at all, was not made until after the evidence complained of had been admitted. In a case of this kind the party cannot sit silent and wait until the evidence is in, willing to take the benefit of it if it shall chance to be for him, and insist as a matter of right to exclude it if it be against him. But as it is not clear that the objection was not made in time, we hold, also, that we would not, because of the admission of such evidence, reverse the judgment.

Aside from our statute, this course, subject to the control of the court to prevent abuse of the right, has the sanction of high authority (*Starks* v. *The People*, 5 Denio, 106), but the record requires the court to lay down no general rule on the subject.

IV. The charge of the court as to the degree and quantity of proof was quite full and unexceptionable. While the defendant's instruction to the effect that if the theory of guilt and innocence was equally satisfied by the whole evidence, the jury should acquit, might properly have been given, yet it is not, in reality, as favorable for the defendant as the instructions actually given, and hence its refusal presents no error for which to reverse the judgment.

V. The defendant complains of the refusal of the court to instruct that an accomplice cannot be corroborated by his wife. In this there was no error. To have given it would have been, in substance, saying to the jury to disregard the testimony of Mrs. Bowman, instead of leaving them to judge of its credibility.

4. —— accomplice: wife of, is competent witness.

The doctrine asked to be given to the jury is not in unison with the provisions of our statute relating to evidence, nor the decisions of this court thereunder. Rev. §§ 3978, 3979, *et seq.; The State* v. *Guyer*, 6 Iowa, 263; *State* v. *Rankin*, 8 id. 355; *State* v. *Collins*, 20 id. 85.

It is further to be observed, that, if Mrs. Bowman be regarded as the wife of an accomplice, her evidence is not the only corroborating evidence in the case. Indeed, the case of the State did not essentially depend upon the testimony of Bowman.

The question as to the liability of the county to compensate the defendant's witnesses is not properly before us on this appeal; and has, moreover, been previously decided by this court.

Affirmed.

