STATE OF IOWA v. J. W. CROFFORD, Appellant.

**Abortion:** CONSPIRACY: EVIDENCE. The victim of an abortion may
1 be a conspirator to commit the act although not generally regarded as an accomplice; and where conspiracy on her part is shown her declarations in furtherance of the design, in case of her resulting death, are admissible against her co-conspirators on trial for the substantive crime.

**Same:** CONSPIRACY: ADJUDICATION. Where two or more parties
2 are charged with a substantive offense and it appears that the same was committed in pursuance of a conspiracy, an acquittal of one defendant is not an adjudication of the question of conspiracy and does not render incompetent the acts and declarations of a co-conspirator, in a prosecution of another defendant for the crime charged.

**Conspiracy:** ADMISSIBILITY OF EVIDENCE. On a prosecution for murder
3 der by an abortion claimed to have been performed, pursuant to a conspiracy, the admission of a letter bearing upon the conspiracy and written by one of defendants to the victim was not erroneous, although from its date it appeared to have been written prior to the formation of the conspiracy, the contents of the letter and one presumably in response thereto with other circumstances indicating an error in its date.

**Same.** In a prosecution for murder by abortion the showing of
4 a conspiracy is held sufficient to justify the admission of declarations of a co-conspirator.

**Same:** ADMISSIBILITY OF EVIDENCE. A letter written by a since deceased victim of abortion indicating her intention to submit
5 ceased victim of abortion indicating her intention to submit to the operation, when taken in connection with a previous letter written by a third party and indicating a conspiracy between the writer and defendant to bring about the commission of the crime, is held admissible for the purpose of proving that a conspiracy in fact existed and the connection of deceased therewith, although she may have joined therein subsequent to its inception.

**Same.** The fact that portions of a letter are irrelevant is not
6 ground for excluding it under a general objection to the entire document; nor is the fact that the court gives an erroneous reason for a correct ruling in admitting the evidence ground for reversal.

**Instructions:** APPLICATION TO EVIDENCE. On a prosecution for murder
7 der by abortion pursuant to an alleged conspiracy, an instruc-

tion directing the jury not to consider certain letters bearing
on the question of conspiracy unless the writers were partici-
pants in the conspiracy at the time of writing the same, was
not subject to the objection that it failed to direct the jury
not to. take the .letters into consideration in determining.
whether the writers were participants.

Instruction: REASONABLE DOUBT. The words "shown" and "ap-
8   pear" when used in an instruction concerning a reasonable
    doubt of defendant's guilt have the same import as "prove"
    or "proven."

Instructions: APPLICATION TO EVIDENCE. Where the State relied
9   on circumstantial evidence and admissions of defendant in a
    prosecution for murder by abortion, it was proper to instruct
    that if defendant was concerned therein, no matter to what ex-
    tent, he was guilty.


*Appeal from Clarke District Court.*— HON. H. K. EVANS,
Judge.


TUESDAY, MARCH 5, 1907.


THE defendant was convicted of the crime of murder
in the second degree, and appeals.— *Affirmed.*

*V. R. McGinnis* and *Temple, Hardinger & Temple,* for
appellant.

*Chas. W. Mullan,* Attorney-General, and *Lawrence De
Graff,* Assistant Attorney-General, and *J. S. Banker,* County
Attorney, for the State.

LADD, J.— As the facts were fully stated on the former
appeal (121 Iowa, 395), it will be enough now to advert to
the circumstances briefly.

Maude Stone entered the defendant's sanitarium Jan-
uary 22 or 23, 1901, and remained there until her death,
six or seven days later. The charge is that
she died as a result of an abortion unneces-
sarily produced by the defendant. The the-
ory of the State is that this was done in pursuance of a con-

1. ABORTION:
   conspiracy;
   evidence.

spiracy between the doctor, Ira Hammond, and Maude Stone. Appellant insists that the victim of an abortion cannot be a conspirator to commit it. Section 4759 of the Code defines the offense by saying that " if any person with intent to produce the miscarriage of any pregnant woman, wilfully administer to her any drug or substance whatever, or, with such intent, use any instrument or other means whatever, unless such miscarriage shall be necessary to save her life," he shall be punished accordingly. This language indicates the design of the lawmakers to treat the woman upon whom the act is perpetrated as the victim, and she cannot be guilty of this crime. *Hatfield v. Gano,* 15 Iowa, 177; *Abrams v. Foshee,* 3 Iowa, 274. This is in harmony with the conclusion reached by courts generally that she is not to be regarded as an accessory or accomplice. *State v. Smith,* 99 Iowa, 26; *Moore v. State,* 37 Tex. Cr. R. 552 (40 S. W. 287); *People v. McGonegal,* 136 N. Y. 62 (32 N. E. 616); *State v. Hyer,* 39 N. J. Law, 598; *Commonwealth v. Brown,* 121 Mass. 69; *State v. Owens,* 22 Minn. 238; Note to *Abrams v. Foshee,* 3 Iowa, 274 (66 Am. Dec. 87).

But it does not follow that she may not engage in an unlawful conspiracy with another to perpetrate the offense upon herself. Section 5059 of the Code declares that, if any two or more persons conspire and confederate together to commit a felony, they are guilty of the crime of conspiracy. This offense is distinct from the crime which it is the object of the conspiracy to commit, and the acquittal of one is not a bar to the prosecution of the other. *State v. Brown,* 95 Iowa, 381. Though she may not be guilty of committing an abortion upon herself, it is a crime for another to do so, and, if she conspires with others to perform the act, there is no escape from the conclusion that she is a coconspirator, and that her declarations in promotion of the common enterprise are admissible in evidence against another conspirator on trial for the commission of the substantive crime. Underhill on Ev. 412. *Solander v. People,* 2 Colo.

48, where it was said: " She may be, and usually is, a party to the illegal combination to effect the abortion, and, as this is the ground upon which the declarations are admitted, it can make no difference that she is not criminally liable for the act done. . . . But where it appears that the woman not only submits to the unlawful attempt, but actively promotes it by seeking the aid of others and adopting the means suggested to accomplish the crime, it cannot be claimed that she is not a party to the criminal design. If the woman is not technically an accomplice she may, nevertheless, conspire with others to produce the abortion, and, conspiracy being shown, her acts and declarations in furtherance of the common design are evidence against others engaged with her in the criminal act."

II.   After the first trial of defendant, Hammond, who was jointly indicted with him, was put on trial and acquitted.   The trial court declined to treat this as an adjudi-cation that the parties named had not con-spired to commit the offense.   Had the charge been conspiracy, there would have been much force in this contention, for a combination of two or more is essential to the commission of that offense, and it necessarily follows that, if one only of two charged therewith is found not guilty, the other must be innocent, for one alone could not have committed the particular offense. *State v. Jackson,* 7 S. C. 283 (24 Am. Rep. 476); 8 Cyc. 689. But conspiracy was not alleged in the indictment. Evidence thereof was introduced merely as an evidentiary fact, tending to establish the charge of murder. The conspiracy to commit a crime and the crime itself are distinct offenses, and the acquittal of one, as said, is not a bar to the prosecution of the other. *State v. Brown,* 95 Iowa, 381. See *State v. Ormiston,* 66 Iowa, 143. Here the conspiracy was not to commit the offense charged in the indictment but a separate and distinct one; i. e., that of abortion, which, as is contended by the State, resulted in death. The acquittal of

2. SAME: con-spiracy; adjudi-cation.

Hammond is not a bar to a trial of him on the charge of having conspired to commit an abortion unnecessarily, and it follows that it furnishes no obstacle to an inquiry concerning such conspiracy in the trial of the defendant for murder. The precise point was determined by the Supreme Court of Indiana, *Musser v. State,* 157 Ind. 423 (61 N. E. 1), saying that " where two or more persons are charged with a substantive offense, not a conspiracy, and it appears that the same was committed in pursuance of a conspiracy, the act and declaration of one shown to have been engaged in the conspiracy to commit such substantive crime are admissible in evidence on the trial of the other defendant, notwithstanding the person whose declarations are sought to be proved had been previously acquitted."· And by the Court of Criminal Appeals of Texas, in *Holt v. State,* 39 Tex. Cr. R. 282 (45 S. W. 1016, 46 S. W. 829). See *People v. Kief,* 126 N. Y. 661 (27 N. E. 556).

III.   Two letters were received in evidence over defendant's objection, one purporting to have been written by Hammond to deceased bearing date " Jan. 15, 1900," and 3. CONSPIRACY: the other from deceased to Hammond, dated admissibility of evidence. " Jan. 17, 1901." These letters are too lengthy to be set out in full. The following extracts are all that are material:

Decatur, Iowa, Jan. 15, 1900.   Miss Maude Stone— Dearest Maude :   Well this is Wed eve & I am going to write you a little bit although I am pretty D tired.   I got home O K Sun eve but it was rather late.   How did you feel Mon morn let me tell you I felt pretty tough but Maude my darling I never begrudge the time I spend with you I hope it wont be long until I can spend it all with you. Of course I know Maud you would rather wait till I am of age but I can get as much now as I can when I am 21 and maybe more we dont know what will happen between now and then.   Say Maude my dear sweet girl I would give a good deal to know how you are.   I do hope that Medicine will fix you out all right.   I don't know how I

will get away to go out there but Maude if you hafto go I will take you, but I wont tell the folks where I am going I dare not. But we will get out of it wont we darling. I hate to see our children go that way but we have got to do it so let it go. If we get married this spring we wont hafto do that way any more will we darling. But Maude I think more of your name than I do of the child. I wouldnt have you ruined by having a child before we were married for anything Maude. You know as well as I do what people would say dont you. . . . Maude I wish you would tell your mother that if Bony leaves we are going to get married and see what she says will you? . . . So good by dear sweet wife I am as ever your loving Hd. Ira.

Decatur, Iowa, Jan. 17, 1901. Mr. I. L. Hammond — My dear Ira. This is Thur. eve and I am going to write you a letter if some one don't bother me. How are you getting along. All right I hope. I am just the same not a bit of change in any way. You know what. Verne and Shorty have gone to Leon. I hope you didn't go and I am pretty sure you didn't. I have been washing today. I never ironed Monday as I said I was going to. I done it yesterday. Rue has been gone every day this week. He went down to Mary's fathers Monday and never came back until Thur noon & then Mary and him both went away that evening & never came back until today noon. They went to see about getting a place but they never got one. I don't believe they are going to try to buy a place now. I think they will build. I wish they would buy but if they don't I can't help it. It would be a whole lot better for them to get away from here as soon as possible. I told Mary today that they had all been visiting but me & that I was going to go. I told Ma I wanted to go & she said all right, but Ira I am going to go two places. I am going to Cainesville & Mt. Avr, the reason I am going to Mt. Ayr is because it is right on the road to Lamoni. I am going Tues. & I am going to start for Mt. Ayr. Of course you know where I will stop & as soon as I can leave there I will go on to Mt. Ayr & you see the folks will never know but what I have been there all the time & from there go to Cainesville. I will not be gone only one Sun. Now I dont hardly know which would be the best for me to go on the

train or have you take me but if you don't take me Ira my dear one won't you please come out there Wed. and stay until I leave.  Please do Ira.  I know you can.  Your folks may give you h— but I have stood more from my folks than you have from yours so darling please go.  It will be lots of company for me to have you there & I want you to be with me as much as you possibly can.  I hope I can get away from here Thur.  I am not going to take all the money with me to pay him because I am afraid the folks will catch on about me spending so much money.  I am going to write Dock a letter and tell him I am coming so he will be prepared for me.  We can talk it all over when I see you Sun night.  Ira I was just thinking today how happy you and I would be when we get married. . If Rue and Mary don't move away from here next fall I don't know what they will do.  Do you suppose your folks would care if we stayed over there till they did move out; if they cant get a place we can or else we can build. . . . Well my dear sweet boy it is getting late and I am tired and will close and go to bed.  Wish you were here to go with me.  Will bid you kind good night with lots of kisses.  I am your loving sweetheart and w——.  Answer soon and be careful of this letter.  Maude S.

Appellant contends that the first letter should have been excluded because written before the conspiracy is claimed to have been formed.  The date of the letter was not conclusive as to when it was written.  The circumstances were such that the jury might well have found that a mistake was made in the date; the error being the insertion of " 1900," instead of " 1901."  Such mistakes are not unusual at the beginning of the year.  The evidence tended to show that the 15th day of January in neither year was Wednesday, the day on which the letter purports to have been written; that the parties did not begin corresponding until May or June of 1900; that " Bony " mentioned therein was Maude's brother, who was not married until in December 25, 1900, and had no talk of leaving home until after that date; and the letter of Maude bears internal evidence

that it was in response to that of Hammond, especially the portions relating to her going away and the removal of her brother. The ruling was right.

IV. Even if Hammond's letter was written in 1901, appellant insists that it was not admissible, for that sufficient evidence had not been introduced to show *prima facie* that a conspiracy existed. This point was determined on the former hearing, and upon reconsideration we reach the conclusion then announced that it is not well taken. Hammond was a youth under twenty years of age, and the evidence tended to show that he visited the sanitarium and had a private interview with defendant on January 12, 1901, and that he was there again about the time Maude Stone arrived and on the 29th, shortly before her death. She reached there on the 22d or 23d of the month, and, as the evidence of the State tended to show, in a normal state of health. This constituted such a *prima facie* showing of collusion between defendant and Hammond as justified receiving the declarations of the latter, made in promotion of their common design at any time subsequent to its inception and before its accomplishment.

4. SAME.

V. Maude Stone might have been found to have become an active participant in the conspiracy of Hammond and defendant, if such there was, from the time she started for the sanitarium. Their design contemplated an abortion on her, and necessarily included either her consent thereto or obtaining control over her person, and her letter to Hammond in connection with his letter to her was admissible as tending to establish her connection with the conspiracy. It was not essential to the admissibility of the evidence that all enter into this unlawful combination at its inception, nor that it be established by direct evidence. If any of them joined therein subsequent to its inception, he thereby adopted the acts of his associates. See Elliott on Ev., section 2937, and deci-

5. SAME: admissibility of evidence.

sions collected in note. It is immaterial whether the conspiracy was hatched by Hammond and the defendant, or the former and the deceased. In either event, the writing of this letter was an act which tended strongly to show, when considered in connection with subsequent events, that Maude Stone either entered into an agreement with Hammond to have an abortion committed on her, which defendat subsequently concurred in and helped execute, or that she joined in an existing conspiracy of Hammond and defendant for a like purpose. These letters are something more than mere declarations of the writers. They are acts constituting substantive evidence of the conspiracy between the parties writing them. That letters or documentary evidence establishing connection between and directly connecting the parties alleging to have conspired are admissible in evidence seems to be authoritatively settled. *Spies v. People,* 122 Ill. 1 (12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320); *McCarney v. People,* 83 N. Y. 408 (38 Am. Rep. 456); *Rex v. Hardy,* 24 Howells, State Trials, 199, 475; *Carter v. State,* 106 Ga. 372 (32 S. E. 345, 71 Am. St. Rep. 262); *Bloomer v. State,* 48 Md. 521; *U. S. v. Babcock,* 3 Dill. 581 (Fed. Cas. No. 14,487).

In the trial of Richard Hardy for treason a letter had been written by a co-conspirator to one Margrot, but not sent, and the question was to whether it might be received in evidence against the defendant on trial. There was a disagreement among the judges, one holding that the evidence was not admissible because in the nature of a confession of a stranger, while two of the judges took the view that it was in the nature of " an act introduced as subservient to the proof of the general nature and tendency of that conspiracy which was alleged and endeavored to be proved as the foundation of affecting the principal prisoner with a share in that conspiracy." Lord Chief Baron Macdonald stated that it seemed to him " that one conspirator addressing a paper to another conspirator having relation to that con-

spiracy (not merely a bare description to a stranger) that one of them addressing that paper to the other is an act complete in that single conspirator, although that paper should be intercepted, or although it never should reach that person for whose perusal it was intended. That distinguishes this from the other case. It is a different act in one, though it does not reach the other. In that sense it is an act of the conspirators, which, in order to show the nature and tendency of that conspiracy, may be received as against any other." Mr. Justice Buller said that, inasmuch as " it goes to the existence of the conspiracy, it seems that it must be received " and in this view the other judge concurred. There always are two things to be considered — first, whether any conspiracy exists; and, next, what share the prisoner had in the conspiracy. But before the evidence of the conspiracy can affect the prisoner materially it is necessary to show that he joined the others therein. The prosecutor may either prove the conspiracy which renders the acts of the conspirators admissible in evidence, or make proof of acts of the different persons and thus prove the conspiracy. See 1 Roscoe, Criminal Evidence, 572. See, also, Spies' case.

This letter is not in the nature of a confession, but is material · as tending to show the deceased's consent to the design formed by Hammond and the accused, and is connected with the defendant by the act of the deceased in going to Lamoni as stated in the letter and later submitting to an abortion. It may be, as contended by the appellant, that there is little in the letter by way of declaration in promotion of the conspiracy, but the writing of such letter was one of the acts of the deceased indicating her connection therewith, and, in view of the other circumstances established in the case, was admissible for the one purpose of proving that the conspiracy in fact existed.

VI. The contents of the letters plainly indicate that they were in furtherance of a conspiracy to commit the

crime. That some of the matters included were irrelevant was not ground for excluding the letters in their entirety, and it was not for the court, in the absence of specific objection to separate the portions which had some bearing on the case from others having no possible connection therewith. Had counsel desired parts excluded he should have pointed them out and made appropriate objections thereto, instead of contenting himself with general objections to each letter as a whole.

6. SAME.

The court in receiving the letters in evidence suggested that they might be admissible at least as tending to establish the pregnancy of Maude Stone. An erroneous reason for a correct ruling never furnishes a ground for reversal.

In the thirteenth instruction the jury was advised not to consider either letter unless the writer was a participant in the conspiracy at the time of writing it; but to do so if he should be found to have been. This is criticised for not directing the jury not to take the letters into consideration in determining whether either of the writers was such participant. The instruction was as favorable as defendant was entitled to have, and therefore cannot be heard to complain.

7. INSTRUCTIONS: application to evidence.

VII. In several instructions the court, evidently to avoid tautology, made use of the expression " it must be shown beyond reasonable doubt," or "it must appear beyound reasonable doubt," and it is argued that these exacted a less degree of proof than would have been had the word " proven " been used instead of " shown " or " appeared." As contended, the words " show " and " appear " are not synonymous with " prove," but when the precise extent of the showing or appearance, as that these must be by a preponderance of the evidence or beyond reasonable doubt, is indicated, the meaning is exactly the same as though " prove " or " proven " had been used instead of " show " or " shown " or " appear " or " appeared."

8. INSTRUCTIONS: reasonable doubt.

VIII.    Exception is taken to the tenth instruction for that it told the jury that they might convict the defendant whether he perpetrated the abortion or some one else did so,

9. INSTRUCTIONS: and he advised and directed or aided and applications to evidence. abetted such in so doing, and death resulted therefrom. That the instruction was correct in the abstract is not questioned, but it is said that there was no evidence of any one having committed the act. The State relied for proof upon circumstantial evidence and admissions of the accused. There was no direct evidence of the commission of the crime, and it was proper that the jury should be advised that if defendant was concerned therein, no matter to what extent, he was guilty.

The record is without error, and the judgment is affirmed.