## PEOPLE *v.* CLEVELAND.

1. CRIMINAL LAW—CONSPIRACY—ASSAULT—EVIDENCE.

> Where, upon a trial for an assault with intent to murder, there is testimony tending to show that another person, jointly charged with the assault, accompanied respondent to the place of its commission, evidence of the condition of such person shortly thereafter, tending to establish his complicity in the crime, is admissible as against the respondent.

2. SAME—HARMLESS ERROR.

> The admission of the statements of such person, explanatory of his condition, is not prejudicial error, where they tended to exclude the presence of the respondent at the time to which they related.

3. SAME—ROBBERY—ASSAULT WHILE ATTEMPTING TO ESCAPE—INSTRUCTIONS TO JURY.

> Where all of the testimony adduced upon a prosecution for assault with intent to murder tends to show that the assault was made in the furtherance of a common purpose on the part of several persons to perpetrate a robbery, it is not error to refuse an instruction as to the rule obtaining where an assault is committed by a co-conspirator in an attempt to escape.

4. SAME.

> In such case, however, upon the trial of one of those jointly charged with the offense, an instruction that, if the respondent did not participate in the assault, he should be acquitted, unless it was part of the arrangement between the parties that the assault should be committed if necessary to accomplish the robbery or to protect themselves from capture or injury while attempting it, sufficiently protects the rights of the respondent.

5. SAME—EVIDENCE—ESCAPE AFTER ARREST.

> Upon the trial of one of several persons jointly charged with crime, evidence that they all escaped from jail after their arrest is admissible.

6. SAME—SELF-SERVING ACTS.

> Evidence that one charged with crime voluntarily surrendered after having escaped from jail is inadmissible to remove the inference of guilt arising from the fact of his escape.

Error to Hillsdale; Lane, J. Submitted November 22, 1895. Decided December 10, 1895.

George Cleveland was convicted of assault with intent to murder, and sentenced to imprisonment in the state prison at Jackson for eight years. Judgment affirmed.

*Fellows & Chandler*, for appellant.

*Guy M. Chester*, Prosecuting Attorney, and *Fred M. Twiss*, Assistant Prosecuting Attorney, for the people.

Long, J. The respondent was informed against, jointly with Robert Mehan and Frank Swidenski, for assault with intent to commit the crime of murder, and on a second trial was convicted, and sentenced to the state prison at Jackson for a term of eight years. He was tried separately.

The people's proofs tended to show that the complaining witness, Eugene Weatherwax, was the keeper of a general store at Somerset Center, Hillsdale county, and on July 14, 1894, after he had closed his store for the night, he was called from his living rooms, which adjoined the store, by a party who claimed he wanted to buy some crackers and cheese. Weatherwax came out with a kerosene lamp in his hand, opened the door of the store, went in, and started to raise the trapdoor leading to the cellar, where his cheese was kept. While stooping over for this purpose, he was called upon to throw up his hands. He turned around and saw two men, one of whom wore a white mask. He still held the lamp in his right hand, and at once attacked the man nearest him with it, striking him over the head, and extinguishing the light. Two shots were fired at him by the two men, each of which took effect, one in his leg and the other in his body. He continued grappling with the man, striking him with what remained of the lamp, the man all the time working towards the door, trying to get away.

This he finally succeeded in doing, and escaped in the darkness. The proofs also tended to show that Mehan was the party with whom the witness Weatherwax had the struggle, and that defendant Cleveland was the party in the store with him, and both of whom shot and wounded him; that another party, who, it is claimed, was Swidenski, was either at the store door, or in that vicinity, stationed as a lookout. The next morning after the affray, Mehan was traced from within two miles of the place to the city of Jackson, and was subsequently identified as the person who attacked Weatherwax. It was claimed, also, that Cleveland was identified as the masked man in the store, who fired one of the shots at Weatherwax.

The people's testimony tended further to show that, on the afternoon prior to the assault, Swidenski engaged a horse and carriage at Jackson, claiming that he wanted to drive into the country some distance; that Mehan was seen with him in the carriage at Jackson; and that subsequently Cleveland joined them, before leaving the city. The three parties were identified by several persons along the way. While they were driving in the direction of Somerset Center, some parties saw them, but a short distance from there. About 1 o'clock the next morning, defendant Cleveland returned the horse to the livery stable. The theory of the prosecution was that Cleveland and Swidenski returned to Jackson with the carriage, leaving Mehan to find his way there on foot, as he was seen the next morning within two miles of Somerset Center, going in the direction of Jackson; he at that time being without a hat, and having cut out the pocket of his coat, and drawn it over his head, as a skull-cap.

The three parties were arrested, bound over, and at the September term, 1894, of Hillsdale county the case was set for trial. The night before the term commenced, the prisoners broke jail and escaped. In the latter part of

December of the same year, respondent, Cleveland, was brought back from New Orleans, La., and placed upon trial at the January term. Upon the trial the defense was that the people were mistaken in the identity of respondent, Cleveland, and he sought to establish an *alibi*. His counsel contend that the court was in error—

(1) In permitting the people to show the acts of Mehan after the affray, his appearance on the way to Jackson and on the succeeding days, the excuse he gave for his then condition, and the result of an examination of his clothing.

(2) In allowing the escape of all the defendants from the jail to be shown.

(3) In not giving certain requests to charge.

(4) In certain portions of his charge to the jury.

(5) In not permitting the respondent to show that he surrendered voluntarily after his escape from jail.

1. It is apparent from the testimony that the three parties, when they left Jackson, had arranged to engage in this robbery. We think there was evidence for the jury to determine the identity of the three on their way there, and there can be little question from the testimony that they were at the store; two of them entering it, and one remaining outside. Mr. Weatherwax testified that he recognized respondent, Cleveland, as the masked man, and who fired one of the shots. By the proofs it was established that a prior arrangement had been made to commit the robbery, and the arrangement had been carried out so far as they were able to do so. It was therefore proper to show the condition of Mehan, who was not on trial, for the purpose of establishing his identity as one of the men who accompanied respondent, Cleveland, from Jackson to Somerset Center, thus identifying the latter's connection with the robbery. In the case of *Ryan* v. *State*, 83 Wis. 486, the charge was burglary. Evidence was admitted, under objection, showing the movements and conduct of each of three persons

charged with the crime on the next morning after the robbery, and after they had separated. The prosecution having shown that these persons were seen together shortly before the crime, this evidence was held competent. It is true that, when the subsequent facts sought to be shown are in the nature of a narrative by one of the parties to the transaction, such narration is inadmissible as evidence against a co-respondent; but in the present case no such statements were sought to be shown, and it was competent to show the condition of any one of the three, immediately after the affray, which would throw any light upon the question of the identity of Cleveland as taking part in the crime charged. What Mehan said as to his condition, as shown by the testimony here, was in no manner prejudicial to the respondent, as its tendency would be to show that respondent was not in his company at the time he received his injuries. See *State* v. *Struble,* 71 Iowa, 11.

2. The court properly permitted the prosecution to show the escape of the respondent and the other two from jail. *People* v. *Marble,* 38 Mich. 117.

3. The court was asked to charge:

"Even though you should find, and be satisfied beyond any reasonable doubt, that the defendant, Cleveland, was seen on the road from the city of Jackson to the village of Somerset Center on the night in question, and was seen in the village of Somerset Center on that night, and was there for the purpose of robbery and of doing his part,—even though this be true, if you should not be satisfied beyond a reasonable doubt that he was actually in the store of Weatherwax, participating in the assault, you could not find him guilty, if the assault made upon Weatherwax was made in an attempt to escape, and not in accordance with a common design."

Counsel for respondent base this request upon the ruling of this court in *People* v. *Knapp,* 26 Mich. 112, where it was said:

"The effect of these rulings was practically to hold

that parties who have combined in a wrong purpose must be presumed, not only to combine in some way in escaping arrest, but also to be so far bound to each other as to be responsible severally for every act done by any of them during the escape. It is impossible to maintain such a doctrine. It is undoubtedly possible for parties to combine in order to make an escape effectual, but no such agreement can lawfully be inferred from a combination to do the original wrong. There can be no criminal responsibility for anything not fairly within the common enterprise, and which might be expected to happen if occasion should arise for any one to do it. In other words, the principle is quite analogous to that of agency, where the liability is measured by the express or implied authority. And the authorities are quite clear and reasonable which deny any liability for acts done in escaping which were not within any joint purpose or combination."

There can be no doubt that the rule laid down in that case is universal, but the facts shown in this case rebut any presumption that the shooting was done in an attempt to escape. The parties had gone there armed, and, when Weatherwax was directed to throw up his hands, he was confronted with revolvers held by each of the parties. The revolvers were not used for the purpose of escape, but, as must be presumed, in execution of the common design of committing robbery. When the command was given Weatherwax to throw up his hands, and he not complying, at once the shots were fired. There is no testimony, and no circumstances connected with the affair, showing that the revolvers were to be used only in case it became necessary in order to escape. But, as the whole question was fairly submitted to the jury under the charge of the court, we need not discuss it further. The court charged:

"If you find that these men entered into an arrangement, either before or after reaching Somerset Center, to rob Mr. Weatherwax or his place of business, and to that end armed themselves with revolvers, to be used if found necessary to accomplish the robbery, or prevent injury or

capture while attempting the robbery, then this defendant would be equally guilty, even though he was not present in the store, if he were acting his assigned part, even though it were only to watch or warn; but if these three persons did not arrange to arm themselves with revolvers, to be used, if necessary, in accomplishing the robbery, or in protecting themselves from capture or injury while attempting the robbery, or the defendant was not a party to such an arrangement, if there was one, and did not participate in the carrying out of such arrangement, then he could not be found guilty."

4. We have examined the charge carefully, and find it very fair to the respondent.

5. We think there was no error in excluding evidence showing that after respondent's escape from jail, and arrival at New Orleans, he voluntarily delivered himself up to the officers of Hillsdale county. In *State* v. *Musick*, 101 Mo. 274, the same question was raised, and the court said:

"There was no error in refusing to permit the defendant to introduce testimony to show that after the shooting he had surrendered himself to the sheriff. Such self-serving acts or declarations are wholly inadmissible, and irrelevant to the issue."

It is true that, when the people show the escape for the purpose of raising some inference of guilt, the prisoner may show the circumstances under which the escape was made. This is allowed to remove the inference of guilt. But I am unable to find any case which permits the person to show a voluntary surrender, after the escape, for such purpose. It is always open to the person to make explanation of the reason of his escape, to show that he was not prompted by a consciousness of guilt. 1 Bish. New Cr. Proc. § 1250, and cases there cited.

We find no error in the record. The conviction must be affirmed.

The other Justices concurred.