Allen *v.* The State.

JAMES ALLEN *v.* THE STATE.

1. CRIMINAL LAW. *Supreme court practice.* If there are two indictments, in the record, this court will not reverse if it is possible to tell upon which indictment the defendant was tried.

2. SAME. *Evidence. Robbery.* Where two parties are charged to have jointly committed a robbery, and who continued to act together in their flight, it is competent upon the trial of one, to prove the money taken from the other, though they may have been caught at different places.

3. SAME.  *Same.*  *House-breaking.*  Upon an indictment for breaking and entering a house with intent to commit a larceny, it is competent to· prove the specific articles stolen, although the same were not averred or specified in the indictment.

## FROM HOUSTON.

Appeal in error from the Circuit Court of Houston county.  J. C. STARK, J.

J. M. QUARLES for Allen.

ATTORNEY-GENERAL LEA for the State.

FREEMAN, J., delivered the opinion of the court.

At April term, 1883, the grand jury of Houston county returned into court an indictment charging that defendant and one Frank Moore "on first day of February, 1883, did feloniously break and enter the business house and out house (it being other than a mansion house) of George E. Rauscher, with the felonious intent to then and there feloniously take, steal and carry away the valuable personal goods therein contained, the property of the said Geo. E. Rauscher, with intent to deprive the true owner thereof, and convert the same to their own use."

This indictment has regularly endorsed on it the name of the prosecutor, with the witnesses sworn by foreman of the grand jury to testify on it before the grand jury, with date of its return into court, to wit, second day of April, 1883.  Immediately following this is a statement of the clerk that a copy of this indictment was issued to Frank Moore and James Allen, April 5, 1883.  On the same day, it appears,

on application of defendants this cause was continued to next term of the court, and leave granted defendants to take depositions.

At next term, August, 1883, the cause was again continued until next term by defendants.

At December term, the record shows, that on December 4, 1883, the grand jury returned into court another indictment against the same parties, endorsed a true bill, and this signed by the foreman at that term. After setting out the indictment, the clerk says: "A copy of the above indictment was furnished the defendants."

The record then proceeds to show that at the same term, to wit, on the 6th, two days after this, that in this cause it appearing to the court that Frank Moore was unable from sickness to attend in court, on application of the attorney-general the court directed a severance and separate trial. On the same day, the said James Allen came in proper person and was "arraigned and charged on said indictment, pleads not guilty to the same, and for his trial puts himself on the country, and thereupon comes a jury to try this issue," and then follows the trial with its result.

The second indictment is identical with the first, with the slight change in the description of the house, that "did break and enter the business house, it being the store house, and not the mansion house of Geo. E. Rauscher."

It appears that on the first indictment the defendants were never arraigned or called on to plead. It appears too, as we have said, that on finding the

second indictment a severance was granted, and Allen, it distinctly appears, was separately arraigned on. this last indictment, and plead not guilty, and was assuredly tried on the last indictment

We are now urged, under the case of *Clinton* v. *The State*, 6 Baxt., 507; *Anderson* v. *The State*, 3 Heis., 86, and *Vincent* v. *The State*, 3 Heis., 120, to reverse this case because the two indictments appear in the record; and it is insisted we cannot see on which the party tried, and that a party cannot be tried. on two indictments at the same time.

It is held in these two cases that a party cannot be held on more than one indictment at the same time, and also, that because it did not appear from the record on which he was tried, in two of the cases, a reversal was had.    In the other, *Vincent* v. *The State,* it was held it did appear he was tried on the second indictment, and that judgment was affirmed.

The head note of the case of *Anderson* v. *State* is "where these indictments for murder appeared in the transcript, and it *did* not appear in any manner, or which of them the defendant was tried, the conviction was held bad."    This is precisely the ground on which the point is rested in the opinion.    Judge Nelson states the point thus: "It is impossible from this transcript of the record to determine whether the plaintiff was tried upon all or *either* of the indictments contained in it.    The record does not contain any designation of the indictment . by numbers or other evidence to enable us to discriminate between the indictments.

The same is the ground stated by the Chief Justice in the case of *Clinton* v. *The State.* He says: "But the record nowhere discloses upon which of the two bills of indictment the defendant below was convicted." While these cases on the proposition were decided according to established precedent, we certainly feel no disposition to extend them beyond what was decided, or the principle on which they are placed, that is, where there are two indictments in a record against the same party, and it is *impossible* to tell on which the party was tried, this is held reversible error.

But the statement of the principle involves the proposition that where it is possible to see on which indictment the party was tried, the fact that there appears another indictment in the record is not error. This is so held in *Vincent* v. *The State,* and is certainly proper. In view of the fact that we know, as a matter of fact, that in such cases there has never been a violation of the rights of the prisoner by trying him on two indictments at the same time, such thing never having been known probably in the practice of any lawyer of the State. In view of the presumption that is always indulged in favor of the regularity of the action of all courts acting within the sphere of their jurisdiction, the courts need not be astute either to find or press such objections.

On the facts we have cited from the record it is beyond question the defendant was tried on the last indictment found. We would stultify ourselves to say that we do not see this to have been the fact.

Allen *v.* The State.

It is clearly shown that he was arraigned on this indictment, plead to it, and was tried and convicted on it, although it is not recited to have been done in so many words. So that it is not like the cases cited, where it is impossible to tell on which indictment the party was tried, but the contrary. He had not been called on to plead to the first indictment, never was arraigned on it. There was no issue to try on that indictment. There was on the second.

In reply to the ingenious argument of counsel pressing on us the importance, as he deems it, of standing by technical rules and forms in order to secure the safety of the citizen, or to preserve the symmetry of the law, we say that the real legal safety of a prisoner should be found in the fact of his innocence, that in an experience of thirty-five years at the bar and on the bench, the writer of this opinion has seldom or never seen an innocent party convicted and punished, but in that period he has seen many hundreds who were guilty acquitted, or receive far less punishment than their offenses demanded. The symmetry of the law is far better when divested of forms that do not embody requirements essential to proof of guilt, than when its technical forms are made to serve as a shelter or shield to prevent the guilty from receiving the penalties due to violation of law. It is a principle, as firmly imbedded in the common law, that adjudged cases even may and ought to be overruled when they are seen to work wrong, as that those that serve the ends of justice shall be made permanent under the doctrine of *stare decisis.*

Allen *v.* The State.

Two exceptions are taken to certain testimony admitted to go to the jury by his Honor, the circuit judge. They are in this form: " It is agreed that defendant excepted to each and every question and answer to each and of each witness in regard to or tending to prove acts, conduct, with transactions or declarations of Moore."

Second, " that defendant likewise excepted to all testimony as to money found, recovered, or tending to prove the offense of larceny to have been committed," which objection was overruled by the court.

The first question is pointed at testimony showing the connection of defendant, Allen, with the said Moore, who was jointly indicted with him, such as that they came to the town of Erin together some four or five days before the robbery, took a room together, stayed together while in the town, left together, were afterwards seen on next day some miles from this place in the woods, were then seen on the cars between the point where they got on the cars and where they jumped off together, under circumstances indicating flight, because they had been watched by a party who was hunting for the parties who had robbed the safe of Rauscher, and then, when they were seen together at McKenzie, and started together to run, when an officer was observed following them.

The main argument, however, has been directed to the particular of arrest of Moore, who, while he started to run with Allen, was not caught until he had run perhaps three-quarters of a mile, and to the fact that about $165 of money was found concealed about his

person, only $117 on the person of Allen—about $330 having been taken from the safe the night of the robbery.

The principle invoked in support of this objection is that which excludes the conduct of co-conspirators, after the termination of the common enterprise, as against each other. The principle has no application to the facts of the case before us. It is not the case of an enterprise agreed upon ended, but the case of two parties who were charged to have been jointly engaged in a robbery, and who continued to act together in their flight and attempted escape, all of which clearly appears to have been assented to expressly or impliedly by each. It is true Allen was not present when Moore was caught, having been captured early in the flight, but we see no evidence of any thing occurring at the point of capture that could prejudice Allen.

The fact that a sum of money was found on Moore, which, when added to what Allen had, correspond within perhaps twenty or thirty dollars of the sum stolen, and that some of this money corresponded in description to the money shown to have been placed in the safe the evening of the robbery, was all competent testimony, when the fact had been shown of the previous and subsequent continued connection and concert of action between the two parties. It would be absurd in this state of things that you could not show the amount and character of the money found on both parties, because only one was on trial at the time. Neither law nor common sense would sustain this.

The second objection goes on the proposition that when a party is indicted for breaking and entering a house, with intent to commit a larceny therein, you cannot prove he did, after so breaking, actually commit a larceny unless you shall aver and specify the fact with the specific articles stolen.

In the case of *Williamson* v. *The State*, 3 Heis., 483, an indictment for house breaking, "with intent" to commit a felony, without specifying the felony was bad.

In the case of *Pardue* v. *State*, 4 Baxt., 10, where the defendant was charged with breaking into a store house for the purpose of committing a larceny, and also charging actual commission of a larceny, the indictment was held good, and the charge of the commission of the larceny equivalent to a charge of the intent to commit that felony.

It would seem that if the charge of larceny of particular articles taken after such breaking, was equivalent to a charge of intent to commit that felony, the proof of such articles having been taken ought equally to serve to show such intent, where the intent is simply generally charged, as in this case. The proof of the actual larceny in neither case is introduced by way of convicting the party of the larceny, but only to show the intent with which the breaking was done. The fact of larceny after the breaking is certainly the most conclusive evidence of such intent, and this intent is the essential element to be shown to complete the offense charged.

We think the testimony was clearly competent as

Allen *v.* The State.

to whether the party can after this be indicted for the larceny, we need not decide, as that question is not before us, and we apprehend is not likely ever to be. We only hold that it is competent on a charge of house-breaking with intent to steal and carry away the personal goods of another, proof of the fact of actual commission of such larceny is competent to show what the intent of the breaking was.

As to the question of identification of the money found on the parties with the money stolen from the safe, while it is not very specific on the precise point of identification of particular bills so found, yet in connection with all the other facts of the loss, and the finding of the money on defendant and his confederate, it was fairly left to the jury to be weighed by them, and they have found that the intent to steal is made out, as well as the breaking into the house. We see no cause to doubt the correctness of this finding, and think the testimony was competent to go to the jury on these questions.

Affirm the judgment.