## JIM JACKSON v. THE STATE.

### *No. 2859.   Decided February 15.*

1. **Theft—Burglary.—Possession of Recently Stolen Property** is an inculpatory fact which is available to the State in burglary as well as in theft, but as in theft, to warrant an inference of guilt from the circumstance of the recent possession of property stolen at the time of the burglary, such possession must be personal and exclusive, must be unexplained, and must involve a distinct and conscious assertion of property by the accused. See the opinion for a state of proof under which it is *held* that the accused's possession of a sack, a part of the fruits of the burglary, in connection with other proof in the case, is ample to sustain a finding of his complicity in the burglary.

2. **Same—Conspiracy.—**The proof in the case being sufficient to show a conspiracy between and an acting together as principals by the accused and K. in the criminal enterprise, the court did not err in admitting evidence of the finding of a part of the fruits of the crime in the defendant's house, and of what transpired at the time, the defendant being absent.

3. **Same.—**It is a rule of evidence that "any fact or circumstance which would tend to prove the guilt of the co-defendant would also tend to prove the guilt of the defendant, and would be admissible against him." The proof showing the conspiracy between and the acting together as principals by the accused and K., the court did not err in admitting proof of the finding of a part of the fruits of the crime in the house of K. after the commission of the crime, and in the absence of K. and the accused.

4. **Same.—**The identity of the sack found in the defendant's house, as one of the sacks stolen at the time of the burglary, was one of the issues in the case. This issue depended largely upon the fact whether or not the said sack had certain initials on it which were testified to have been on the sack stolen. The proof showed that since the burglary the said sack had been washed and the marks

·almost obliterated. Witnesses for the State testified that they were still able to distinguish the said initials, while several witnesses for the defense who examined the sack testified that no trace of such initials could be found by them. At the instance of the State the said sack was then submitted to the inspection of the jury, to which proceeding the defense objected. But *held*, that the said inspection by the jury occurring during the progress of the trial, and not in retirement, and in the presence of the court and the parties to the trial, the proceeding was not error. See the opinion on the question.

APPEAL from the District Court of Parker. Tried below before Hon. J. W. Patterson.

The conviction was for burglary, and the penalty assessed against the appellant was a term of two years in the penitentiary.

*J. M. Richards* and *G. A. McCall,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This is the second appeal in this case. ·On the former appeal the judgment was reversed and the cause remanded on account of certain defects in the charge of the court, which were pointed out. Jackson v. The State, *ante,* p. 143.

On the second trial the learned judge corrected his former charge in ·these particulars, and although several objections are again strenuously urged to the charge we will, without discussing them, say that in our opinion they are not well taken, and that the charge as now presented is a sufficient exposition of the law applicable to the facts. But one special instruction was asked by the defendant, in addition to the general charge, and it was given.

Appellant has been tried for and convicted of burglary. A strong criminative fact against him was the finding in his house, a few days after the burglary, one of the seamless sacks identified by the State's witnesses as one of the sacks containing the wheat stolen from the burglarized house. The burglary was committed on the night of August 20, and the sack was found in defendant's house on the 28th of August following, or seven days afterwards. At the time it was found defendant had been arrested and was in jail. He has never attempted to explain his possession of the sack. His wife stated that it was his, defendant's; that he had had it for several months, and that he had brought it home filled with peaches from Edwards's place while he was working at Edwards's.

Had this been the only criminative or inculpatory fact against the defendant there might have been some question as to the sufficiency of the evidence to support a conviction for burglary.

"Mere possession of goods stolen without other evidence of guilt is not to be regarded as *prima facie* evidence of burglary. But where

goods have been feloniously taken by means of a burglary, and they are immediately or soon after found in the actual and exclusive possession of a person who gives a false account or refuses to give any account of the manner in which the goods came into his possession, proof of such possession and guilty conduct may sustain the inference not only that he stole the goods, but that he made use of the means by which access to them was obtained. There should be some evidence of guilty conduct besides the bare possession of the stolen property before the presumption of burglary is superadded to that of the larceny." Whart. Crim. Law, 8 ed., sec. 813; Whart. Crim. Ev., 9 ed., sec. 736; 2 Am. and Eng. Ency. of Law, p. 694.

In Georgia, and perhaps in some of the other States, it is held that recent possession by a person who is unable to account for his possession, raises a presumption of guilt and would authorize the jury to find a verdict of guilty. Lundy v. The State, 71 Ga., 360.

With us the rule is the same as in theft, that is, that "to warrant an inference of guilt of theft from the circumstance of possession of recently stolen property, such possession must be personal and exclusive, must be unexplained, and must involve a distinct and conscious assertion of property by the defendant." Field v. The State, 24 Texas Ct. App., 422, citing Willson's Crim. Stats., sec. 1299; Morgan v. The State, 25 Texas Ct. App., 513; Jackson v. The State, ante, 143. And this seems to be the rule in Alabama. White v. The State, 72 Ala., 195.

In this case defendant did not explain nor attempt to explain his possession, though his wife did or attempted to do so for him. What are the other inculpatory and criminative facts?

One Kilby, a brother-in-law of defendant, was implicated in the burglary, and the evidence of Kilby's guilt, as shown by the record, is, to our minds, overwhelming. Defendant was staying at Kilby's house. He had previously worked at Edwards's place during the harvest, and knew the premises. At sundown on the evening of the 20th of August he was seen in an empty two horse wagon with Kilby, going in the direction of Edwards's. The next morning at sunrise Kilby and another party are at the mill where Kilby sells the stolen wheat, and takes in part pay a hundred-pound sack of flour. The purchaser does not know or identify defendant as the man who was with Kilby, but several witnesses met Kilby and Jackson, this defendant, as they were returning from Weatherford, between 9 and 10 a. m., after the sale of the wheat, in a two horse wagon; and one testifies that he saw the sack of flour in the wagon, and that Kilby told him they were going to have biscuits, and asked him to come over and see him. These witnesses knew Jackson, this defendant, and identified him as the party with Kilby. In addition to these facts one of the seamless sacks which contained a part of the wheat stolen from the burglarized

house was, as we have seen, found at defendant's house. This sack was fully and completely identified by the alleged owners and other witnesses for the State. We think the evidence amply sufficient to show a conspiracy and acting together as principals by Kilby and defendant in the criminal enterprise, and to warrant the inference that defendant was a party to and guilty of the burglary.

But it is insisted that the court erred in allowing evidence to go to the jury of the finding of the sack and what transpired at the time, the defendant not being present. This evidence was admissible and legitimate as a circumstance tending to connect defendant with the burglary, the sack being one of the fruits of the crime. Burr. on Cir. Ev., pp. 445, 447.

For the same reason it is objected that the court erred in allowing evidence of the finding of some of the stolen sacks at the house of Kilby several days after the commission of the burglary, when neither Kilby nor defendant were present, and the additional objection urged to this evidence is that the sacks were found after the conspiracy (if any had ever existed between defendant and Kilby) had been consummated, and that no act or fact connecting Kilby with the crime, done or ascertained after consummation of the conspiracy, could be used as evidence against or affecting this defendant. As stated above, the evidence in our opinion amply established the conspiracy and acting together of the parties in the crime. The sacks found at Kilby's were fruits of the crime, and "any fact or circumstance which would tend to prove the guilt of the co-defendant would also tend to prove the guilt of the defendant, and would be admissible against him." Pierson v. The State, 18 Texas Ct. App., 524.

But again, on the trial the sack found at defendant's house was claimed by several witnesses to be marked with the initials of Edwards's name, viz., "N. G. E.," and "W.'F.'r.'D."—an abbreviation for the town of Weatherford; and the letter E on the edge of the mouth of the sack was claimed to have been worked with thread by Mrs. Edwards. Edwards testified that when he purchased the sacks in Dallas they were full of corn, and that the party from whom he purchased them marked his (Edwards's) initials and the abbreviation of Weatherford with lampblack upon them. It was proved that after the sack was found at Jackson's his wife, Mrs. Jackson, had washed it and almost obliterated these letters in lampblack; and Varner, the constable, testified that when he found the sack at Jackson's he saw the letter E in thread near the mouth, and commenced picking it out with his knife, when he was stopped by Moreland, who also testified to the same fact. On the trial the witnesses Edwards and two or more other State's witnesses examined the sack and swore that they could still see these initials and marks upon the sack. Defendant had the sack put in the hands of other witnesses, who examined it carefully, and they swore they could see no letters, or anything like letters, upon it.

The prosecution then proposed to let the jury examine and inspect it. for themselves, and this the court permitted over defendant's objections. It is insisted that "there was an irreconcilable conflict in the evidence as to the marks on the sack, and that the jury ought to have decided the same on the evidence of the witnesses, and not from a personal examination and inspection by the jury themselves." The testimony of the witnesses concerning the sack was all before the court, and in the presence of the jury, and was heard by them. The sack itself was before them when the witnesses were testifying about it.

This is not like the case of "a view" by the jury when neither the court nor the parties are present, and which proceeding would be illegal and might be prejudicial to the rights of a defendant. Smith v. The State, 42 Texas, 444. On the contrary, everything about and concerning the matter transpired in the court, at the trial, and in the presence and hearing of court, counsel, parties, and jury. They all saw and heard what the witnesses had to say, and the parties fully examined and cross-examined them in connection with the sack which was exhibited, examined, and inspected by the witnesses when testifying.

This identical question came up in Wynne v. The State, 56 Georgia, 114, when there was a conflict between witnesses as to the physical appearance of a pistol and cartridges used in the difficulty about which the trial was being had. The court say: "We think the court should have permitted the jury to have and inspect the pistol. * * * We can see no objection to the pistol being exhibited to the jury and inspected by them."

All materials in any way part of the *res gestæ* may be produced as evidence on the trial. Whart. Crim. Ev., 9 ed., sec. 312, and note; McDowel v. The State, 90 Ind., 320; Hart v. The State, 15 Texas Ct. App., 203; Levy v. The State, *ante,* 209.

Mr. Wharton says: "As we have seen, it is one of the necessary incidents of bringing into court instruments by which an act is alleged to have been done that such instruments should be tested in open court. It is only where this is done by the jury after they retire, when parties have no opportunity of revising the process, that objection can be made. When the process is conducted openly, as part of the trial of the case, it is a valuable auxiliary in the discovery of the truth." Whart. Crim. Ev., 9 ed., sec. 314, and note.

Under the circumstances exhibited in the bill of exceptions we see no error in allowing the jury to examine and inspect the sack for themselves. We think it was legitimate to permit them to do so in order that they might, with the sack before them, see and determine the conflict in the evidence concerning the marks, letters, and figures upon it.

We have examined this record maturely in the light of the able brief and oral argument of counsel for appellant, and have been unable to find

any error of sufficient importance to demand or require of us a reversal of the judgment, and it is therefore affirmed.

              *Affirmed.*

Hurt, J., absent.