Musser *v.* State.

# MUSSER *v.* THE STATE.

[No. 19,064. Filed June 25, 1901. Rehearing denied Nov. 22, 1901.]

CRIMINAL LAW.—*Murder.—Evidence.*—In a trial for murder it was not error to admit in evidence an anonymous postal card received by the city marshal, stating that a woman living at a certain street had been robbed, where the jury were instructed that it was admitted only for the purposes of showing the information upon which the marshal acted in discovering the robbery and murder, and as tending to show the time when the same was placed in the postoffice. *pp. 427, 428.*

SAME.—*Murder.—Evidence.*—Where in a prosecution for murder the theory of the State was that the crimes of burglary, robbery and murder were committed, and that three persons participated therein, evidence that it was generally known that the murdered woman had money was properly admitted, where it was shown that one of the persons jointly indicted with defendant, and who the evidence tended to show was present when the murder was committed, stated a few days before the murder "that his partner had just got out of jail; that he was going up the line to pull off a peach; that there was an old lady up the line who was afraid of banks, that she had lots of money and lived all alone," etc. *pp. 428-430.*

TRIAL.—*Evidence.—Objection.—Exception.—Appeal and Error.*—An objection to a question, "that it is incompetent and immaterial and too remote," is too uncertain, indefinite and general to present any question. *pp. 430, 431.*

SAME.—*Evidence.—Objection.—Exception.—Appeal and Error.*—Objections to the admission of evidence not made in the court below will not be considered on appeal. *pp. 430, 431.*

CRIMINAL LAW.—*Murder.—Conspiracy.—Evidence.*—Where in a prosecution for murder there was evidence tending to show that three persons were present at the commission of the crime, evidence that one of the persons, who was jointly indicted with defendant, had in his possession, the next day after the murder, money, bills, and gold of the same denomination and kind shown to have been in the possession of the murdered woman before her death was properly admitted. *pp. 431-440.*

SAME.—*Murder.—Conspiracy.—Evidence.—Declarations of Co-conspirator.*—Where two or more persons are charged with a substantive offense, not a conspiracy, and it appears that the same was committed in pursuance of a conspiracy, the acts and declarations

| | |
|---|---|
| 157 | 423 |
| 160 | 327 |
| 160 | 576 |
| 157 | 423 |
| 161 | 293 |
| 157 | 423 |
| 163 | 574 |
| 157 | 423 |
| f164 | 237 |
| 157 | 423 |
| 165 | 441 |
| 157 | 423 |
| f168 | 89 |
| f168 | 437 |
| 157 | 423 |
| 169 | 313 |
| 169 | 314 |
| 169 | 315 |
| 169 | 502 |
| 169 | 503 |
| 157 | 423 |
| 171 | 700 |

of one shown to have been engaged in the conspiracy to commit such substantive crime are admissible in evidence on the trial of the other defendant, notwithstanding the person whose declarations are sought to be proved had been previously acquitted.  *pp. 440, 441.*

APPEAL AND ERROR.—*Record.—Evidence.—Written Instrument.—* Where a written instrument is offered in evidence and excluded, it must be brought into the record, in order to present any question on the ruling excluding it.  *p. 441.*

CRIMINAL LAW.—*Murder.—Joint Indictment.—Acquittal of One.— Evidence.—*In a trial for murder the record of the acquittal of one jointly indicted with defendant was properly excluded.  *p. 441.*

SAME.—*Murder.— Conspiracy.— Circumstantial Evidence.— Instruction.—*In a trial for murder, in which there was evidence that defendant conspired with others to commit the crime, the court properly instructed the jury that evidence in proof of the conspiracy is generally circumstantial, and that it is not necessary for the purpose of showing the existence of the conspiracy to prove that defendant and some other person or persons came together and actually agreed upon a common design or purpose, and agreed to pursue such common design and purpose in the manner agreed upon, but that it is sufficient if such common design and purpose is satisfactorily shown by circumstantial evidence.  *pp. 442. 443.*

SAME.—*Murder.—Conspiracy.—Evidence.—Instruction.—*An instruction in the trial of one charged with murder, in which there was evidence of conspiring with others to commit the crime, the court properly instructed the jury that while it is necessary, in order to establish the existence of a conspiracy, to prove a combination of two or more persons by concert of action to accomplish a criminal or unlawful purpose, yet it is not necessary to prove that the conspirators came together and entered into a formal agreement to effect such purpose, and that such common design may be regarded as proved if the jury believe from the evidence that the parties to such conspiracy were actually pursuing in concert the common design or purpose, whether acting separately or together, by common or different means, provided they all were leading to the same unlawful result.  *pp. 442, 443.*

SAME. — *Murder. — Conspiracy.—Instruction.—Reasonable Doubt.—* Where defendant on trial for murder was indicted· jointly with another, an instruction defining conspiracy, and the evidence necessary to establish the same, was not erroneous because it did not state that the facts and circumstances establishing the conspiracy must be proved beyond a reasonable doubt, the indictment not charging defendant with the offense of a conspiracy, but with the crime of murder in the first degree.  *p. 443.*

Musser *v.* State.

TRIAL.—*Instructions Must be Considered as an Entirety.*—Instructions are considered with reference to each other, and as an entirety, and not separately, or in dissected parts, and if the instructions as a whole correctly and fairly present the law to the jury, even if some particular instruction, or some portion of an instruction, standing alone or taken abstractly, and not explained or qualified by others, may be erroneous, it will afford no ground for reversal. *p. 444.*

SAME.—*Instructions.—Harmless Error.*—Mere verbal inaccuracies in instructions, or technical errors in the statement of abstract propositions of law, furnish no grounds for reversal, when they result in no substantial harm to defendant, if the instructions, taken as a whole, correctly state the law applicable to the facts of the case ; nor is the giving of an erroneous instruction reversible error, when it appears that the substantial rights of the complaining party have not been prejudiced thereby. *pp. 444, 445.*

SAME.—*Instructions.—Harmless Error.*— Available error cannot be predicated upon the refusal of the court to give certain instructions tendered by defendant, where the instructions were not signed as required by statute. *pp. 445, 446.*

From Blackford Circuit Court; *J. S. Dailey,* Special Judge.

Albert Musser was tried and convicted of murder in the first degree, and he appeals. *Affirmed.*

*J. T. France, J. W. Kelley* and *J. A. Hindman,* for appellant.

*W. L. Taylor,* Attorney-General, *A. M. Waltz* and *G. W. Bergman,* for State.

MONKS, C. J.—Appellant and one Samuel H. Marshall were charged by indictment in the Jay Circuit Court with the crime of murder in the first degree for the killing of Louisa Stolz. On application of appellant the venue was changed, as to him, to the court below, where a trial resulted in a verdict that appellant was guilty of murder in the first degree as charged, and assessing his punishment at imprisonment for life. Over his motion for a new trial, final judgment was rendered on the verdict. The only errors assigned call in question the action of the court in overruling appellant's motion for a new trial.

Louisa Stolz, the deceased, was a widow, seventy-four years old, about five feet in height, and weighed about ninety pounds; she resided on a sparsely settled street in the suburbs of the city of Portland; immediately back of her residence was located the stave and heading factory of S. H. Adams & Company, and just opposite was the residence of her nearest neighbor, Mrs. Loretta Boes. Mrs. Stolz had lived alone in this residence since the death of her husband in 1889. She was a woman of wealth, and it was generally understood that she kept considerable sums of money about her house. She was eccentric, a recluse, having but few visitors, and of a miserly disposition. On Saturday, February 12, 1898, about 1 o'clock in the afternoon, Mont. Mahan, the city marshal of Portland received through the postoffice an anonymous postal card notifying him "that the old lady living near the north end heading factory" had been robbed. He at once went to her residence, and after knocking at the door and receiving no response went across the street to Mrs. Loretta Boes, a neighbor, and showed her the postal card, and then returned to the business part of the city. Afterwards on the same day Mrs. Boes with two men from the heading factory went to the residence of Mrs. Louisa Stolz, and, finding the outside kitchen door unlocked, entered the house, and in the sitting-room found her dead. Her hands and feet were bound, and her mouth and the upper part of her throat filled with a cotton cloth, and a red handkerchief was bound about her head, and her head and face were covered with a large cotton spread. On one side of the throat were three or four blue marks or bruises; on the other side but one; the face was dark; the cartilaginous rings composing the trachea were crushed and broken. Death had been produced by strangulation, either by pressure of a human hand upon the throat or by the cloth that had been pressed into the mouth, or both. When the cloth was removed from the mouth, discolored virus and blood, with the odor of

putrefaction followed. The body was highly discolored. *Rigor mortis* was leaving the body, the lower part of the abdominal cavity was all green, and putrefaction had begun. The day was cold and raw; the temperature at 6 o'clock a. m. of that day was thirty-one degrees Fahrenheit. The various rooms in the home had been ransacked; drawers opened and emptied of their contents; beds torn up; valuable papers, such as mortgages, certificates of deposit, and notes were scattered upon the floor; among these papers were found some empty cotton money sacks such as she was known to have carried money ($20 gold pieces) in but a short time before her death; there was dry mud in her hair when the body was found and also upon the shoulder of her dress. On the outside of the house, and at the north end of the same, were her carpet slippers soaked with water. It had rained during the day and evening of Friday, February 11th. Near by was what appeared like the print of a shoulder in the mud. There were tracks near by filled with water, and some partly obliterated by the rain; some of the tracks were made with pointed-toed shoes and the others with broad-toed shoes.

The postal card received by the city marshal was read in evidence over the objection of appellant. It was proper for the marshal to testify when he received the postal card, and as to the information it contained, as a reason for his going to the residence of Mrs. Stolz, and to that part of the city, and for having informed Mrs. Boes, who afterwards discovered the body of the deceased, of such information. While it may not have been necessary to read the postal card in evidence for this purpose, it was not improper to do so. The court instructed the jury that the postal card and the postmark thereon were only admitted in evidence for the purpose of showing the information upon which the marshal acted in what he did, and as tending to show the time when the same was placed in the postoffice. No error prejudicial to

appellant was committed in admitting the postal card in evidence.

During the progress of the trial Loretta Boes, a witness for the State, who lived across the street from Mrs. Stolz, testified without objection that she "always considered that the deceased was a woman of considerable means." The State thereupon asked her "whether that information was confined to the people living immediately near, or was it general," if she knew. To this question appellant objected for the reason "that the same is hearsay, and wholly immaterial and irrelevant". The court overruled the objection, and the witness answered. "Yes it was generally known that she had money." It is probably true that the objection to the question was not sufficiently specific to present any question. Elliott's App. Proc. §§779-781; *Swaim* v. *Swaim,* 134 Ind. 596, 598; *Johnson* v. *Brown,* 130 Ind. 534, 536; *Evansville, etc., R. Co.* v. *Fettig,* 130 Ind. 61, 62; *Cincinnati, etc., R. Co.* v. *Howard,* 124 Ind. 280, 282, 283, 8 L. R. A. 593, 19 Am. St. 96. Appellant now urges that it was an attempt to prove by reputation that the deceased kept large sums of money about the house. And "that because of the fact that Marshall and appellant were known to have had money a day or two after the murder of the deceased, and that her house showed signs of having been robbed, that it would be conclusive evidence that they had robbed her." There was other evidence from which the jury was authorized to find that the deceased kept a considerable sum of money, paper and gold, about her house. The evidence objected to, however, was clearly proper for another purpose. The theory of the State was that the crimes of burglary, robbery, and murder were perpetrated on the night of Thursday, February 10, 1898, and that three persons participated therein, one a resident of Portland, who had a crippled arm, the others being appellant and said Samuel H. Marshall, who was jointly indicted with him. It appears from the evidence that said Marshall ar-

rived in the city of Anderson, Indiana, on February 7, 1898, being Monday of the week of the murder, and that on the same day appellant was released from the county jail in said city, where he had been imprisoned since the 19th day of January, 1898. That neither of said parties had any money. On Wednesday, February 9th, at about 8 o'clock p. m., appellant came into the boiler room of a paper-mill at Muncie, Ind., and told the boiler tender with whom he was acquainted that he had come from Anderson, and that a paper man had come with him. Appellant had formerly worked at this mill. Samuel H. Marshall was also a straw-board worker. Appellant slept in the boiler room of the paper-mill that night. Samuel H. Marshall came into said paper-mill between 10 and 12 o'clock the same night. About 11 o'clock that night he came down into the boiler room from the machine room of the mill and inquired for appellant, and requested the boiler tender to wake appellant at 6 o'clock next morning and send him up to the machine room. Marshall slept in the machine room that night. He told Frank Markel, the machine tender who was working in the mill, that he had come from Anderson; "that his partner was sleeping down-stairs in the boiler room; that his partner had just got out of jail at Anderson; that he was going up the line to pull off a peach; that there was an old lady up the line who was afraid of banks; that she had lots of money and lived all alone; that she was supposed to have between $5,000 and $7,000 in the house; that there was a young fellow up there who had his right arm blown off in a safe cracking job; that there was no house near only across the street, and a factory near by; that his partner was down in the boiler room, and he knew where the money was." The next morning, the 10th, about 6 o'clock, the boiler tender awoke the appellant and told him Marshall was up-stairs and wanted to see him, and appellant said "all right". He got up and went to the machine room and inquired for Marshall. Appellant and Marshall stepped to one side and

talked together for several minutes. On the afternoon of that day, Thursday, February 10, 1898, appellant, Marshall, and a young man of Portland with a crippled arm were seen together in Portland near the water tank of the Grand Rapids & Indiana Railroad. Appellant wore square-toed shoes. While in company with appellant and Marshall that afternoon, said young man hid at the approach of a person he knew. About 3 o'clock on said afternoon appellant in company with said young man visited the stave and heading factory of S. H. Adams & Company a short distance from the residence of the deceased, and appellant talked with a workman employed in said factory. About 4 o'clock of said afternoon appellant and Marshall were in a restaurant in said city of Portland and about dusk they were seen together within one and one-half squares of the Stolz residence. Between 6 and 7 o'clock the same evening appellant, Marshall, and said young man were seen going north in the direction of the Stolz residence. In connection with the evidence of the foregoing facts it was proper for the State to prove that it was generally understood, or believed, that Mrs. Stolz kept money or large sums of money at her house. This evidence was proper for the jury to consider in connection with the other evidence in the cause in determining whether or not Mrs. Stolz was the old lady referred to by Marshall in his statement at the paper-mill at Muncie. In the determination of this question the materiality of the evidence depended, not upon whether the deceased in fact kept large sums of money about the house but upon that being the general understanding.

It is assigned as the fifty-fifth cause for a new trial that the court erred in permitting Kate Riley, a witness for the State, to answer a question, which is set forth, over the objection and exception of appellant. The objection stated by appellant to the question was "that it is incompetent and immaterial and too remote." An entirely different objection to the question is urged by appellant in this court. It

is settled law that said grounds of objection stated in the court below were too indefinite, uncertain, and general to present any question. *Mortgage Trust Co.* v. *Moore,* 150 Ind. 465, 470; *Miller* v. *Dill,* 149 Ind. 326, 331, 332; *Indiana, etc., Co.* v. *Wagner,* 138 Ind. 658; *Board, etc.,* v. *O'Connor,* 137 Ind. 622, 637, 638; *Bass* v. *State,* 136 Ind. 165, 170, 171; *Swaim* v. *Swaim,* 134 Ind. 596, 598; *Johnson* v. *Brown,* 130 Ind. 534, 536; *Evansville, etc., R. Co.* v. *Fettig,* 130 Ind. 61, 62; *Cincinnati, etc., R. Co.* v. *Howard,* 124 Ind. 280, 282, 8 L. R. A. 593, 19 Am. St. 96; 2 Burns Dig., p. 648; 1 Woollen's Dig. pp. 636, 637, par. 7922. It is equally well settled that objections to the admission of evidence not made in the court below will not be considered on appeal. *Stout* v. *Rayl,* 146 Ind. 379, 386; *Indiana, etc., Co.* v. *Wagner,* 138 Ind. 658, 663, and cases cited; *Board, etc.,* v. *O'Connor,* 137 Ind. 622, 637, 638; *Bass* v. *State,* 136 Ind. 165, 170, 171; *Chandler* v. *Beal,* 132 Ind. 596, 597, and cases cited; *Wood* v. *State, ex rel.,* 130 Ind. 364, 366; *Bingham* v. *Walk,* 128 Ind. 164, 173; *Louisville, etc., R. Co.* v. *Rush,* 127 Ind. 545, 550.

The State was permitted over the objection of appellant to prove that the Samuel H. Marshall who was jointly indicted with appellant had in his possession on February 11, 1898, the next day after it is alleged the murder was committed, a considerable sum of money in gold, silver and paper, the largest gold piece being $20 and the largest bill being $100; that on February 14, 1898, a few days after, he had in his possession $300, and in addition to said sum he had quite a large amount of money. The court at the proper time gave the jury the following instructions in regard to this evidence.

"(24) Some testimony has been admitted tending to show that Samuel H. Marshall, who was jointly indicted with the defendant for the murder, shortly after the alleged murder was committed, had in his possession large sums of money, which it is claimed by the State was the property of

the deceased. This fact, if it has been proved, is proper for you to consider, together with all the other facts and circumstances proved on the trial, in determining the guilt or innocence of the defendant; if you further find that said money, or any part thereof, was obtained or procured by said Marshall from the deceased as the fruits of a conspiracy, theretofore entered into, by and between the defendant and said Marshall or by and between the defendant, Marshall and some other person or persons, for the robbing and murder of the deceased or for the burglarizing the house of the deceased, and said facts, if any such facts have been proved, must be considered by you, with all the other facts and circumstances proved, in determining the guilt or innocence of the defendant, whether the defendant was or was not present at the time said Marshall was seen with said money or any part thereof in his possession." The giving of this instruction is also assigned as a cause for a new trial.

Appellant insists that "the court erred in admitting this evidence and in giving said instructions for the reason that the appellant was not present, and was not bound by the acts of Marshall after the crime was committed. That the conspiracy, if any, between appellant and Marshall ended with the commission of the crime, and the acts and declaration of a conspirator, after the criminal enterprise is ended, are not admissible in evidence against another conspirator." It is true that the declarations of one conspirator, made after the consummation of the conspiracy, are not admissible in evidence against another conspirator, but as to the acts and appearance of one conspirator after the criminal enterprise has ended being admissible against a co-conspirator, there is some conflict in the authorities. The evidence objected to, however, was not declarations or acts of Marshall, but merely that he had in his possession money, bills, and gold, of the same denomination and kind shown to have been in the possession of Mrs. Stolz before her death.

The rule urged by appellant in regard to the declarations

and acts of a conspirator made after the object of the conspiracy has been accomplished has no application to such evidence. The evidence was concerning a physical fact, and tended to prove the guilt of Marshall, and when considered in connection with all the other evidence in the case also tended to prove the guilt of appellant. There was no doubt that a homicide had been committed. The question of the guilt or innocence of appellant was to be determined by the jury. There was evidence tending to show that three persons were present at the commission of the crime, and any fact tending to connect any one of them with the crime was competent evidence against the others. That evidence of this character is admissible is well settled. *Frazier* v. *State,* 135 Ind. 38, 40, 41; *Fitzpatrick* v. *United States,* 178 U. S. 304, 20 Sup. Ct. 944, 44 L. Ed. 1078; *St. Clair* v. *United States,* 154 U. S. 134, 149, 14 Sup. Ct. 1002, 38 L. Ed. 936; *People* v. *Cleveland,* 107 Mich. 367, 65 N. W. 216; *Angley* v. *State,* 35 Tex. Cr. 427, 34 S. W. 116; *Pierson* v. *State,* 18 Tex. App. 524; *Mimms* v. *State,* 16 Ohio St. 221; *Allen* v. *State,* 80 Tenn. 424; *Ryan* v. *State,* 83 Wis. 486, 53 N. W. 836; *Clark* v. *State,* 28 Tex. Cr. App. 189, 12 S. W. 729, 19 Am. St. 817; *Jackson* v. *State,* 28 Tex. App. 370, 13 S. W. 451, 19 Am. St. 839; *Pace* v. *State,* (Tex. Cr. App.), 20 S. W. 762; *Conde* v. *State,* 33 Tex. Cr. Rep. 10, 24 S. W. 415; *Thompson* v. *State,* 35 Tex. Cr. Rep. 511, 34 S. W. 629; *Armstrong* v. *Commonwealth* (Ky. 1895), 29 S. W. 343; *Watt* v. *People,* 126 Ill. 9, 18 N. E. 340.

In *Fitzpatrick* v. *United States,* 178 U. S. 304, Fitzpatrick and two others, Brooks and Corbett, were indicted for murder committed in Alaska. The defendants obtained separate trials. As to the admissibility of evidence, the Supreme Court of the United States said: "The testimony to which objection was made was that of Ballard, a soldier on guard duty at Dyea on the night of the occurrence, who testified that about 2 o'clock in the morning he heard four or

five shots from the direction of Roberts' cabin [the place where the murder was committed] and the Wonder Hotel and that some fifteen or twenty minutes or half an hour thereafter, a man came to him. 'I was in the cabin, and he rapped on the door, and I went and opened the door for him, and he said he would like to get a doctor. He was shot. I directed him to the hospital in town, and he went that way.' Witness said that he did not know the man, but was afterwards told that his name was Corbett. He was brought into court, but witness could not indentify him with certainty. Objection was also made to the testimony of Dr. Price, who swore that about 3 o'clock in the morning Corbett applied to him for medical assistance; that he was wounded in the right shoulder, and witness was in attendance upon him about three weeks or a month. Also to the testimony of John Cudihee, deputy United States marshal, who arrested Fitzpatrick, Brooks and Corbett the day of the murder, and made an investigation. He found Roberts in his cabin dead, then went to Fitzpatrick and Corbett's cabin and found there a lot of shoes and clothing covered with blood. The witness produced the shoes in evidence, pointed out which pair was Fitzpatrick's and which was Corbett's, explained that Fitzpatrick had identified the shoes in his office, and pointed out which pair was Corbett's and which was his. Witness also pointed out the blood stains on both shoes. Corbett's shoe fitted the footprints in the sand which the witness found in the rear of Roberts' cabin, where the shooting occurred. The shoe had hobnails in it, and the heel of one was worn off so the print in the sand was a peculiar one. Objection was made to the admission of any testimony relating to the acts of Corbett, and especially that which occurred after the alleged crime had been committed. No direct testimony appears in the record showing the presence of Corbett at the cabin before, during or after the commission of the crime for which Fitzpatrick was then on trial. Had the statement of Corbett, that he was shot, and inquir-

ing for a doctor, tended in any way to connect Fitzpatrick
with the murder, it would doubtless have been inadmissible
against him upon the principle announced in *Sparf* v. *United
States,* 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343, that
statements made by one of two joint defendants in the ab-
sence of the other defendant, while admissible against the
party making the statement are inadmissible against the
other party. In that case declarations of Hansen connecting
Sparf with the homicide there involved, tending to prove the
guilt of both, and made in the absence of Sparf, were held in-
admissible against the latter. This is a familiar principle of
law; but the statement of Ballard was not within this rule.
Corbett had evidently been wounded, and was asking for a
doctor. His accompanying statement that he was shot was
clearly competent to explain his condition, and had no
tendency whatever to connect Fitzpatrick with the transac-
tion. This statement, as well as that of Dr. Price, to the
effect that he found Corbett with a wound in his right
shoulder, and that of Cudihee as to finding a lot of shoes
and clothing covered with blood, and connecting one pair
of these shoes with the footprints found near Roberts' cabin,
were all facts connected with the crime which the govern-
ment was entitled to lay before the jury. Fitzpatrick and
Corbett roomed together. Their bloody clothes and shoes
were found in their cabin the morning after the murder.
Brooks had roomed with them. Brooks and Corbett in their
affidavit for a continuance swore in effect that they were
together that night, and attempted to establish a joint alibi.
There was no doubt that a homicide had been committed,
and it was the province of the jury to determine whether
the defendant was a guilty party. Any fact which had a
bearing upon this question, immediate or remote, and occur-
ring at any time before the incident was closed, was proper
for the consideration of the jury. Of course, statements
made in the absence of Fitzpatrick implicating him with the
murder would not be competent, but none such were admit-

ted; but any act done, whether in Fitzpatrick's presence or not, which had a tendency to connect him with the crime, was proper for the consideration of the jury, and the fact that Corbett was not then on trial is immaterial in this connection. As there was some evidence tending to show a joint action on the part of the three defendants, any fact having a tendency to connect them with the murder was competent upon the trial of Fitzpatrick. The true distinction is between statements made after the fact, which are competent only against the party making the statement, and facts connecting either party with the crime which are competent as a part of the whole transaction. In the trial of either party it is proper to lay before the jury the entire affair, including the acts and conduct of all the defendants from the time the homicide was first contemplated to the time the transaction was closed. It may have a bearing only against the party doing the act, or it may have a remoter bearing upon the other defendants; but such as it is, it is competent to be laid before the jury."

In *People* v. *Cleveland*, 107 Mich. 367, Cleveland was prosecuted jointly with Mehan and Swidenski for assault with intent to kill, and was tried separately. As to the admissibility of evidence in Cleveland's trial of the acts, appearance and condition of the other two in Cleveland's absence, the court said: "It is apparent from the testimony that the three parties, when they left Jackson, had arranged to engage in this robbery. We think there was evidence for the jury to determine the identity of the three on their way, and there can be little question from the testimony that they were at the store; two of them entering it, and one remaining outside. Mr. Weatherwax testified that he recognized respondent, Cleveland, as the masked man, who fired one of the shots. By the proofs it was established that a prior arrangement had been made to commit the robbery, and the arrangement had been carried out so far as they were able to do so. It was therefore proper to show the condition of

Mehan, who was not on trial, for the purpose of establishing his identity as one of the men who accompanied respondent, Cleveland, from Jackson to Somerset Center, thus identifying the latter's connection with the robbery. In the case of *Ryan* v. *State*, 83 Wis. 486, the charge was burglary. Evidence was admitted, under objection, showing the movements and conduct of each of three persons charged with the crime on the next morning after the robbery, and after they had separated. The prosecution having shown that these persons were seen together shortly before the crime, this evidence was held competent. It is true that, when the subsequent facts sought to be shown are in the nature of a narrative by one of the parties to the transaction, such narration is inadmissible as evidence against a co-respondent; but in the present case no such statements were sought to be shown, and it was competent to show the condition of any one of the three, immediately after the affray, which would throw any light upon the question of the identity of Cleveland as taking part in the crime charged."

In *Pierson* v. *State,* 18 Tex. App. 524, Bob Pierson and his brother, Tom, were jointly indicted for murder. Separate trials were granted. On Bob's trial the question of the admissibility of evidence tending to show what occurred at Tom Pierson's house on the morning after the murder was raised, and as to this evidence the court of appeals of Texas said on p. 561: "It was not error to admit the testimony of the witness Odenheimer as to what he observed at Tom Pierson's house on the morning after the murder; nor to admit the testimony of the witness Tulk as to finding pistols at Tom Pierson's house on said morning. There was positive evidence that Tom Pierson and the defendant, acting together, committed the murder. Whilst the declarations of Tom Pierson, made after the consummation of the murder, and when the defendant was not present, would not be admissible as evidence against the defendant, still any fact or circumstance which would tend to prove the guilt of Tom

Pierson would also tend to prove the guilt of the defendant, and would be admissible against him, the evidence having directly connected them together in the commission of the offense. Such facts and circumstances would be corroborative of the direct evidence of their joint guilt. That Tom Pierson was found in bed at home on the next morning after the murder, while all the other members of the family were up, and that three pistols were found at his house, one of which had the appearance of having been recently discharged, were circumstances which, when considered in connection with the other evidence in the case, were relevant to prove the guilt of this defendant. They were independent physical facts of an inculpatory nature, and were not acts and declarations of a co-conspirator, transpiring after the consummation of the crime."

In *Jackson* v. *State*, 28 Tex. App. 370, Jackson was indicted for burglary. On the trial, his brother-in-law, Kilby, who appears not to have been indicted, was implicated in the burglary. It being contended that stolen sacks, the fruits of the crime, found in Kilby's possession, were not proper evidence against Jackson, the court said: "But it is insisted that the court erred in allowing evidence to go to the jury of the finding of the sack and what transpired at the time, the defendant not being present. This evidence was admissible and legitimate as a circumstance tending to connect defendant with the burglary, the sack being one of the fruits of the crime. Burrill on Cir. Ev. 445, 447. For the same reason it is objected that the court erred in allowing evidence of the finding of some of the stolen sacks at the house of Kilby several days after the commission of the burglary, when neither Kilby nor defendant were present, and the additional objection urged to this evidence is that the sacks were found after the conspiracy (if any had ever existed between defendant and Kilby) had been consummated, and that no act or fact connecting Kilby with the crime, done or ascertained after consummation of the con-

spiracy, could be used as evidence against or affecting this
defendant. As stated above, the evidence in our opinion
amply established the conspiracy and acting together of the
parties in the crime. The sacks found at Kilby's were
fruits of the crime, and 'any fact or circumstance which
would tend to prove the guilt of the codefendant would also
tend to prove the guilt of the defendant, and would be ad-
missible against him.' "

In *Conde* v. *State,* 33 Tex. Cr. Rep. 10, Gregoria, Ru-
perto and Esteban Conde were jointly indicted for murder.
Ruperto and Esteban were placed on trial. The state proved
that about a week after the murder Esteban was seen at a
dancing party wearing the sash of deceased, and that after
the murder Esteban and Gregoria sold the gun of deceased.
In both instances Ruperto was not present. It is urged
that these facts were inadmissible as against Ruperto. In
discussing the admissibility of said evidence the court said
on p. 11: "The evidence adduced on the trial sufficiently
shows that these three parties, father and two sons, acted
together in committing the murder. While the acts, con-
duct and declarations of one co-conspirator, made after the
consummation of the conspiracy, can not be used as evidence
against another co-conspirator, yet any fact or circumstance
which would tend to prove the guilt of the codefendant,
would also tend to prove the guilt of the defendant, and
would be admissible against him. *Pierson* v. *State,* 18 Tex.
Cr. App. 524; *Clark* v. *State,* 28 Tex. Cr. App. 189. The
possession of the sash by Esteban Conde, as well as the pos-
session of the gun by Gregoria and Esteban Conde, would
be admissible to prove their guilt, and would also be admis-
sible for the purpose of proving the guilt of Ruperto Conde,
and was therefore admissible against him. They were not
acts, declarations or conduct of the co-conspirators transpir-
ing subsequent to the crime, but were physical facts, inde-
pendent and inculpatory in their nature, and were the fruits
of the crime. The gun was seen in the possession of de-

ceased the day of and prior to his disappearance, and the sash he had been wearing for two years prior to his death. *Pace* v. *State* (Tex. Civ. App.), 20 S. W. 762. The testimony was clearly admissible."

In *Armstrong* v. *Commonwealth* (Ky.), 29 S. W. 343, Armstrong and five others were indicted for arson. Armstrong was tried separately. The court said: "The court permitted a witness to testify that he saw James Collins, one of the alleged conspirators, at home the next day after the house was burned, in bed, asleep, from which circumstance it might be inferred he was present when the crime was committed, the night before. Appellant was also at the house of Collins on that occasion. But whether his presence makes evidence of the fact that Collins was in bed, asleep, competent against him, if not otherwise so, we need not consider, because, in our opinion, the conspiracy having been shown, the commonwealth had the right to prove the fact in question. Strictly, the conspiracy was not then pending, nor could the fact of Collins' going to bed at that time of day be regarded as in furtherance of the original design. But it was a circumstance tending to show he was present when the house was burned, and therefore fit to be proved, just as it would have been proper to prove he went to bed on account of a gunshot wound, if McGuire had fired at the conspirators in the act of burning his house." It is clear that the court did not err in admitting said evidence, or in giving said instruction.

Frank Markle, a witness for the State, over the objection of appellant testified to the declarations made by said Marshall at the paper-mill at Muncie on the night of Wednesday, February 9, 1898, before the murder of Mrs. Stolz. The declarations were properly admitted as the declarations of a co-conspirator before the commission of the crime. Appellant, however, insisted that the same were improperly admitted in this case, because said Samuel H. Marshall had been tried and acquitted before appellant's trial, and before

said evidence was admitted. No proof of said fact had been made or offered when Frank Markle testified to said declarations. But if said proof had been made, yet the evidence was properly admitted. It is true that where only two persons are connected in a conspiracy, and they are charged with that offense, and one is acquitted, that on proof of such acquittal the other must also be acquitted. This is upon the ground that it takes two or more persons to commit a conspiracy. But where two or more persons are charged with a substantive offense, not a conspiracy, and it appears that the same was committed in pursuance of a conspiracy, the acts and declarations of one shown to have been engaged in the conspiracy to commit such substantive crime are admissible in evidence on the trial of the other defendant, notwithstanding the person whose declarations are sought to be proved had been previously acquitted. *Holt* v. *State,* 39 Tex. Cr. Rep. 282, 45 S. W. 1016, 46 S. W. 829; *People* v. *Kief,* 126 N. Y. 661, 27 N. E. 556.

Appellant assigns as his 105th cause for a new trial, that the court erred in refusing to permit him to introduce in evidence a certified copy of the record of the trial and acquittal of Samuel H. Marshall in the Randolph Circuit Court. No such record, however, is in the bill of exceptions. The rule is, that where a written instrument is offered in evidence and excluded, it must be brought into the record in order to present any question on the ruling excluding it. *Roseboom* v. *Jefferson School Tp.,* 122 Ind. 377, 378; *Rucker* v. *Steelman,* 97 Ind. 222, 223. There being nothing in the record to sustain said cause for a new trial the same must fail. It is clear, however, from what we have already said concerning the acquittal of Marshall, if he was acquitted as claimed, that said record was properly excluded. *Holt* v. *State,* 39 Tex. Cr. Rep. 282; *People* v. *Kief,* 126 N. Y. 661.

It is also insisted by appellant that the verdict is contrary to the evidence and contrary to law. A part of the evidence

has already been set out and we do not deem it necessary to extend this opinion by stating the remainder. We have, however, carefully examined all the evidence and are satisfied that the same fully sustains the verdict, and that appellant was properly convicted.

After defining what it takes to constitute a conspiracy, the court in instruction seventeen informed the jury, in substance, that "evidence in proof of conspiracy will generally be circumstantial, and it is not necessary for the purpose of showing the existence of the conspiracy for the State to prove that the defendant and some other person or persons came together and actually agreed upon a common design and purpose, and agreed to pursue such common design and purpose, in the manner agreed upon. It is sufficient if such common design and purpose is shown to your satisfaction by circumstantial evidence."

In another instruction (18) the court said, that "while it is necessary, in order to establish the existence of a conspiracy, to prove a combination of two or more persons by concert of action to accomplish a criminal or unlawful purpose, yet it is not necessary to prove that the conspirators came together and entered into a formal agreement to effect such purpose; that such common design may be regarded as proved if the jury believe from the evidence that the parties to such conspiracy were actually pursuing in concert the common design or purpose whether acting separately or together by common or different means provided that all were leading to the same unlawful result." The giving of each of said instructions was assigned as a cause for a new trial. The law as declared in said instructions is sustained by many authorities. 3 Greenleaf on Ev. §93; 3 Russell on Crimes (9th Am. ed.), marginal pp. *165, *166; Wharton's Crim. Law (9th ed.), §§1398, 1399, 1401; Wharton Crim. Ev. §§32, 698; *McKee* v. *State,* 111 Ind. 378, 383; *Archer* v. *State,* 106 Ind. 426, 432; *Kelley* v. *People,* 55 N. Y. 565, 14 Am. Rep. 342; *People* v. *Arnold,* 46 Mich. 268,

277, 9 N. W. 406; *Dayton* v. *Monroe,* 47 Mich. 193, 194, 196, 10 N. W. 196; *Spies* v. *People,* 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. 320, 395, and note p. 476.

Appellant contends that each of said instructions is erroneous for the further reason that it is not stated that the circumstances or facts establishing the conspiracy must be proved beyond a reasonable doubt. It will be observed that the indictment did not charge appellant with the offense of conspiracy, but with the crime of murder in the first degree. It was not necessary, therefore, that the elements or facts constituting the crime of conspiracy be proved beyond a reasonable doubt. It was sufficient if each essential element of the crime charged in the indictment be so proved. That such proof was required as to the crime charged, the jury were fully informed by other instructions. The court, however, did inform the jury, in another instruction, "if they believed beyond a reasonable doubt, from all the facts and circumstances in evidence, that appellant and said Marshall, or appellant, Marshall, and some other person or persons, entered into a conspiracy to commit the offense charged, that such proof is sufficient to establish the existence of such conspiracy, though no direct evidence showing such conspiracy was introduced." In another instruction the court informed the jury that "the declarations of Marshall before the crime charged was committed, in the absence of appellant, were proper to be considered by them with all the other facts and circumstances proved on the trial, in determining the guilt or innocence of appellant, if the jury believe from the evidence beyond a reasonable doubt that appellant prior to the murder entered into a conspiracy with said Marshall to rob or murder or to burglarize the house of the deceased, and that such declarations were made in furtherance of such conspiracy, or common design, and the fact, if it be a fact, that Marshall has been tried and acquitted of said charge, will not make such statements or declarations incompetent if such conspiracy has been shown by the evidence." The

instructions are to be read and construed together as an entirety (*Shields* v. *State,* 149 Ind. 395, 406, 407-410), and when so construed it appears that on the subject of proof of the facts constituting the conspiracy they were more favorable to appellant than he was entitled to demand.

It is clear from what we have already said on the admissibility of the record of Marshall's acquittal, that the court did not err in informing the jury in the instructions last quoted, that the declarations of Marshall referred to in said instructions were to be considered by the jury even if Marshall had been tried and acquitted on said indictment, if the conspiracy was proved by the evidence. *Holt* v. *State,* 39 Tex. Cr. Rep. 282; *People* v. *Kief,* 126 N. Y. 661.

Appellant complains of certain instructions given at the request of the State on the subject of reasonable doubt. Some of said instructions complained of may be ambiguous and contain verbal inaccuracies, and if standing alone might be objectionable. It is settled law in this State, however, that instructions are considered with reference to each other, and as an entirety, and not separately, or in dissected parts; and if the instructions as a whole correctly and fairly present the law to the jury, even if some particular instruction, or some portion of an instruction standing alone, or taken abstractly, and not explained or qualified by others may be erroneous, it will afford no ground for reversal. *Shields* v. *State,* 149 Ind. 395, and cases cited; *Rains* v. *State,* 152 Ind. 69. Mere verbal inaccuracies in instructions, or technical errors in the statement of abstract propositions of law, furnish no grounds for reversal, when they result in no substantial harm to the defendant, if the instructions, taken as a whole, correctly state the law applicable to the facts of the case, nor is the giving of an erroneous instruction reversible error when it appears that the substantial rights of the defendant have not been prejudiced thereby. *Shields* v. *State, supra,* pp. 406, 408, and cases cited. *Harris* v. *State,* 155 Ind. 265.

Two instructions on the subject of reasonable doubt stated the law as declared in *Bradley* v. *State,* 31 Ind. 492. One of said instructions was requested by appellant.

The court gave an instruction at request of appellant which informed the jury in substance that in a criminal case the law contemplates the concurrence of twelve minds in a conclusion of guilt before a conviction could be had, and that each juror must be satisfied, beyond a reasonable doubt, of the defendant's guilt, before, under his oath, he can consent to a verdict of guilty, the same being in the language used in *Castle* v. *State,* 75 Ind. 146.

The jury was instructed at request of appellant that he "is presumed to be innocent and that this presumption continued through the trial and until overthrown by the evidence, and that it is the duty of the jury, if it can consistently be done, to reconcile the evidence upon the theory that the defendant is innocent."

Although there may be verbal inaccuracies and ambiguities in some of said instructions complained of; yet when they are read and construed in connection with the instructions just mentioned and the other instructions on this subject, and all the instructions given are considered and construed together as an entirety, it is clear that the same did not prejudice the substantial rights of appellant. Moreover, the verdict was right, under the evidence, and in such case we are properly required to disregard such errors. *Stanley* v. *Dunn,* 143 Ind. 495, 501; *Mode* v. *Beasley,* 143 Ind. 306, 334, and cases cited; *Swaim* v. *Swaim,* 134 Ind. 596, 599, and cases cited; *Woods* v. *Board, etc.,* 128 Ind. 289, 292, and cases cited; *Reed* v. *State,* 141 Ind. 116, 123; *Strong* v. *State,* 105 Ind. 1; *Epps* v. *State,* 102 Ind. 539; *Galvin* v. *State,* 93 Ind. 550; Gillett on Crim Law (2nd ed.), §917.

It is further contended by appellant that the court erred in refusing to give certain instructions asked by him. The Attorney-General insists that there was no available error in this, for the reason that the instructions were not signed

by appellant or his counsel as required by subdivision six of §1892 Burns 1901, §1823 R. S. 1881 and Horner 1897. Said instructions not being signed as required by the statute, no available error was committed in refusing the same. *Glover* v. *State,* 109 Ind. 391, 403.

We have, however, examined the instructions requested by appellant, and refused, and find that so far as they correctly expressed the law they were substantially embraced in those given by the court. Such being the case, appellant would have no ground for complaint, even if the request for said instructions had been properly made. *Delhaney* v. *State,* 115 Ind. 499, 501; *Stephenson* v. *State,* 110 Ind. 358, 374, and cases cited; *Siberry* v. *State,* 149 Ind. 684, 694; *Anderson* v. *State,* 147 Ind. 445, 450; *Hinshaw* v. *State,* 147 Ind. 334, 387.

Upon a careful review of the entire record we are convinced that the verdict was right upon the evidence, that a correct result was reached, and that no reason exists for a reversal of the judgment.

Judgment affirmed.